**Mary and Mike SCHINDLER, Appellants,**

v.

**Joseph Eugene SCHINDLER, Co–Trustee of the Ruby K. Schindler Part B Trust, William E. Schindler and Charles Tischler, Independent Co–Executors of the Estate of J.L. Schindler, Deceased, and William E. Schindler, Individually, Appellees.**

No. 05–02–00963–CV.

Court of Appeals of Texas, Dallas.

Nov. 21, 2003.

David N. Mcnees, Sherman, for Appellants.

Lisa Carol Bennett, Gainsville, T. Scott Smith, Smith and Smith, Sherman, for Appellees.

Before Justices MOSELEY, LANG, and LAGARDE.[1]

## OPINION

Opinion by Justice MOSELEY.

Mary and Mike Schindler appeal the trial court's denial of their application to

---

1. The Honorable Sue Lagarde, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

probate a second will of Ruby K. Schindler, deceased, as a muniment of title or, alternatively for its admission to revoke Ruby's earlier probated will and codicils. In four issues, they complain Joseph Eugene Schindler (Gene) as trustee of the Ruby K. Schindler Part B Trust did not have capacity to sue and standing to object to the second will; the trial court's finding that Ruby did not have testamentary capacity when she signed the second will was against the great weight and preponderance of the evidence; the trial court erred in awarding attorney's fees against them; and the trial court's findings on default for failure to present the second will for probate within four years of Ruby's death were against the great weight and preponderance of the evidence. We reverse the award of attorney's fees and render judgment in appellants' favor on that issue. In all other respects, we affirm the trial court's judgment.

## BACKGROUND

Most of the parties in this case are members of the Schindler family. We refer to the parties by first name to avoid confusion. Ruby died June 18, 1996. At the time of her death, she was survived by her husband, J.L. Schindler, known as "Jodie," their surviving children, William (Bill) Schindler, and George Schindler, and Bill's children, Gene Schindler, Mark Schindler, Mike Schindler, Kathy Fritz, and Sue Fulkerson. On July 27, 1987, Ruby had executed a will.[2] The 1987 Will created a trust with income to Jodie for his lifetime and the remainder to Ruby's children and grandchildren. Gene and Bill were named as co-trustees of the trust in the third codicil.

Ruby signed another will on September 26, 1995 (the 1995 Will). This will revoked all prior wills and codicils. The 1995 Will provided for some specific bequests to Jodie and the remainder to Jodie in the event an intervivos trust, which was created when the 1995 Will was executed, was not in existence at Ruby's death. The record shows that the trust was terminated during Ruby's life. Therefore, under the 1995 Will, Ruby's property would have passed to Jodie. Several people were present when Ruby signed the 1995 Will, including Jodie and Gene.

Jodie offered the 1987 Will for probate. The 1987 Will was admitted to probate as a muniment of title on September 10, 1996. The trust was never funded after probate of the 1987 Will.

After Ruby's death, Jodie married Mary. Jodie died April 13, 2000. His will left approximately seventy-five percent of his estate to Mary and twenty-five percent to his son Bill. Bill and Charles Tischler were named co-executors in Jodie's will. There is no dispute here regarding probate of Jodie's will.

On June 14, 2001, Mary and Mike filed an application to probate Ruby's 1995 Will as a muniment of title or, alternatively, to admit the 1995 Will to revoke the 1987 Will. Later, George joined in the application. Appellees were served as parties interested in the estate; they answered asserting probate was barred by limitations and that Ruby lacked the testamentary capacity to make the 1995 Will, and requested attorney's fees. The case was tried to the court. The trial court denied the application of the 1995 Will and awarded attorney's fees to appellees against Mary, Mike, and George jointly and severally. The trial court filed findings of fact

---

2. We refer to the will executed on July 27, 1987, and the three codicils as the "1987 Will."

and conclusions of law. Mary and Mike, but not George, appeal.

## CO-TRUSTEE'S CAPACITY TO SUE AND STANDING TO OBJECT TO THE 1995 WILL

■ In the first issue, appellants challenge the trial court's conclusion of law that Gene, as trustee of the Ruby K. Schindler Part B Trust, had capacity to sue and standing to object to the 1995 Will. Appellants argue, first, that there were no findings of fact that Gene acted as a trustee, had legal authority to act alone without joinder by the co-trustee, or had a legal interest as a trustee in the assets of Ruby's estate, and, second, that such findings would be so against the great weight and preponderance of the evidence as to be manifestly unjust. Appellants contend that Gene's pleadings and testimony should be struck.

But in their application, Mary and Mike named Gene as a person interested in Ruby's estate. Gene answered in his capacity as a trustee of the Part B Trust. The evidence showed that Gene was a beneficiary of the Part B Trust under the 1987 Will. Therefore, there was evidence that Gene was a "person interested" in Ruby's estate. *See* TEX. PROB.CODE ANN. § 3r (Vernon 2003) ("interested person" is any person "having a property right in" estate being administered); § 10 (any person interested in estate may file opposition and be heard upon such opposition); *Logan v. Thomason,* 146 Tex. 37, 42, 202 S.W.2d 212, 215 (1947) ("interested person" is one who "has some legally ascertained pecuniary interest, real or prospective, absolute or contingent, which will be impaired or benefitted, or in some manner materially affected, by the probate [proceeding]"). Because he is an interested person in Ruby's estate, we conclude that Gene had standing to contest the application of the 1995 Will.

■ Whether he opposed the application in his capacity as a trustee is immaterial to his appearance in the suit. First, probate proceedings are actions in rem; thus they bind all persons unless set aside in the manner provided by law. *Mooney v. Harlin,* 622 S.W.2d 83, 85 (Tex.1981). In rem judgments bind the whole world, and that is so whether the persons who have rights in the proceeding's subject matter and were personally served answered or not. *Ladehoff v. Ladehoff,* 436 S.W.2d 334, 336 (Tex.1968). Therefore, the result of the suit would bind Gene in any capacity. Next, appellants do not challenge the standing or capacity of Bill or Charles Tischler. Therefore, even if we resolved this issue in appellants' favor, there would be no change in the outcome of the trial, except as regards attorney's fees. Finally, even if we sustained appellants' issue and struck Gene's answer, Bill and Charles Tischler's answers raised issues in opposition on which evidence was offered. Moreover, appellants do not argue how sustaining this issue would result in the striking of Gene's testimony, which is the result they request.

Accordingly, the trial court correctly concluded that Gene, as a trustee of the Ruby K. Schindler Part B Trust, had capacity to sue and standing to object to the 1995 Will. We resolve appellants' first issue against them.

## PROBATE OF THE 1995 WILL

In their fourth issue, appellants contend the trial court erred in finding that Jodie, Mary, and Mike defaulted their rights to probate the 1995 Will because these findings are against the great weight and preponderance of the evidence. Although appellants refer to the findings on default, we note that the trial court made conclusions

of law that Jodie, Mary, and Mike defaulted their rights to probate the 1995 Will.

*Standard of Review and Applicable Law*

 Conclusions of law are reviewable when attacked as a matter of law, but not on grounds of sufficiency of the evidence, as if they were findings of fact. *Arthur M. Deck & Assocs. v. Crispin*, 888 S.W.2d 56, 60 (Tex.App.-Houston [1st Dist.] 1994, writ denied). Although a trial court's conclusions of law may not be challenged for factual insufficiency, the trial court's conclusions drawn from the facts may be reviewed to determine their correctness. *Id.* When specific findings of fact and conclusions of law are filed and a statement of facts is before us, we will sustain the findings if there is sufficient evidence to support them, and we will review the legal conclusions drawn from the facts found to determine their correctness. *Id.*

 The probate code provides:

If, after a will has been admitted to probate, an application for the probate of a will of the decedent, not theretofore presented for probate, is filed, the court shall determine whether the former probate should be set aside, and whether such other will should be admitted to probate, or whether the decedent died intestate.

Tex. Prob.Code Ann. § 83(b) (Vernon 2003). The code further provides:

No will shall be admitted to probate after the lapse of four years from the death of the testator unless it be shown by proof that the party applying for such probate was not in default in failing to present the same for probate within the four years aforesaid; and in no case shall letters testamentary be issued where a will is admitted to probate after the lapse of four years from the death of the testator.

*Id.* § 73(a) (Vernon 2003). A section 83(b) proceeding is governed by the section 73(a) four-year limitation period. *Klein v. Dimock*, 705 S.W.2d 408, 410 (Tex.App.-Fort Worth 1986, writ ref'd n.r.e.); *Estate of Morris*, 577 S.W.2d 748, 752 (Tex.Civ. App.-Amarillo 1979, writ ref'd n.r.e.). "Default" means failure to do the act required; as used in the statute, it means failure to probate a will due to the absence of reasonable diligence on the part of the party offering the instrument. *House v. House*, 222 S.W. 322, 325 (Tex.Civ.App.-Texarkana 1920, writ dism'd w.o.j.). Whether the proponent of a will is in default in not presenting the will within four years of the testator's death is ordinarily a fact question for the trial court. *Owens v. Felty*, 227 S.W.2d 379, 380 (Tex.Civ.App.-Eastland 1950, writ ref'd). The burden is upon the proponent of a will to show he or she was not in default in not presenting the will for probate within the proper time. *Brown v. Byrd*, 512 S.W.2d 758, 760 (Tex. Civ.App.-Tyler 1974, no writ). A proponent would not be considered personally in default if he or she did not know of the existence of the will provided such proponent was not negligent in failing to discover whether there was a will. *Id.* However, if any heir or devisee was in default, such default would bar his or her descendants or legatees from any right to have such will probated. *Id.* at 760–61; *see Abrams v. Ross' Estate*, 250 S.W. 1019, 1022 (Tex. Com.App.1923, op. adopted); *Faris v. Faris*, 138 S.W.2d 830, 832 (Tex.Civ.App.-Dallas 1940, writ ref'd); *Matt v. Ward*, 255 S.W. 794, 795–96 (Tex.Civ.App.-Fort Worth 1923, writ ref'd).

*Discussion*

 Ruby died June 18, 1996. Pursuant to section 73(a), Mary and Mike must have applied for probate of the 1995 Will by June 18, 2000. The application was filed

June 14, 2001. The parties stipulated that the application to probate the 1995 Will was filed more than four years after Ruby's death.

Mary and Mike contend that they did not know of the 1995 Will until May 2001, when the attorney for Bill and Charles Tischler produced it during discovery relating to the probate of Jodie's estate. However, it is undisputed that Jodie, a devisee of the 1995 Will, knew of the 1995 Will and failed to offer it for probate before he died April 13, 2000. His death before the end of the four-year limitations period is immaterial because the statute makes no provision for the life of the applicant as to the limitations period. Therefore, Jodie was in default.

Mary, as a devisee of Jodie, stands in no better position than Jodie. *See Brown,* 512 S.W.2d at 770–61; *Faris,* 138 S.W.2d at 832; *Matt,* 255 S.W. at 795–96. Whether Bill or Charles Tischler knew about the 1995 Will and failed to present it for probate is immaterial as to Mary because those persons are not proponents of the 1995 Will. *See Faris,* 138 S.W.2d at 832 (noting "only the 'default' of the party applying for the will's probate is in issue"). Therefore, the trial court correctly found that Jodie and Mary defaulted their right to probate the 1995 Will.

■ As to Mike, the trial court concluded that Mike was in default, finding that he did not present any proof that he was not in default in failing to present the 1995 Will for probate within four years of Ruby's death. Appellants do not attack this finding on appeal. Moreover, Mike did not appear at trial and offered no evidence as to default. Evidence as to Bill's or Charles Tischler's acts are immaterial to Mike, as they are to Mary. *See id.* Thus, we conclude the trial court correctly concluded that Mike defaulted his right to probate the 1995 Will.

We resolve appellants' fourth issue against them.

### REVOCATION OF THE 1987 WILL

■ In their second issue, appellants contend that the trial court erred in finding that Ruby did not possess the necessary testamentary capacity when she signed the 1995 Will because the finding is against the great weight and preponderance of the evidence.

*Standard of Review and Applicable Law*

A trial court's findings are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's answer. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994). However, the findings of fact are not conclusive when there is a complete statement of facts in the record. *Tucker v. Tucker,* 908 S.W.2d 530, 532 (Tex.App.-San Antonio 1995, writ denied). If a party challenges the factual sufficiency of a trial court's adverse finding of fact on an issue upon which that party had the burden of proof, the challenging party must show that the adverse finding was against the great weight and preponderance of the evidence. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). We must consider and weigh all of the evidence, and we can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001). The trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Ashcraft v. Lookadoo,* 952 S.W.2d 907, 910 (Tex.App.-Dallas 1997) (en banc), *pet. denied,* 977 S.W.2d 562 (Tex.1998) (per curiam).

■ Section 63 of the probate code provides that a written will or any clause shall only be revoked by a subsequent will, codicil, or declaration in writing, executed with like formality. TEX. PROB.CODE ANN. § 63 (Vernon 2003); *Chambers v. Chambers,* 542 S.W.2d 901, 905 (Tex.Civ.App.-Dallas 1976, no writ). Although not permitted to be admitted to probate as a will because it is untimely under section 73, a will may be used to show revocation of a prior will. *Chambers,* 542 S.W.2d at 905. The testatrix of a will offered for purposes of revoking a prior will must have possessed the legal standard of testamentary capacity when she executed the subsequent will. *Id.* at 907. To have testamentary capacity, the testatrix at the time she executes the will must have sufficient ability to understand: her business upon which she is engaged; the effect of the act of making a will; the nature and extent of her property; the persons to whom she meant to devise and bequeath her property; and the persons dependent upon her bounty, and the mode of distribution among them. Further, the testatrix must have memory sufficient to collect in her mind the elements of the business to be transacted and hold them long enough to form a reasonable judgment. *Id.* at 906. The court is limited to determining whether the testatrix's mental capacity measures up to the legal standard of testamentary capacity. *Id.* at 907.

■ The proper inquiry in deciding testamentary incapacity is the condition of the testatrix's mind on the day the will was executed. *Lee v. Lee,* 424 S.W.2d 609, 611 (Tex.1968). When, as here, the factfinder found adversely to the proponent on the issue of testamentary capacity and there is no direct testimony in the record of acts, demeanor or condition indicating that the testatrix lacked testamentary capacity on the day the will was executed, the testa-

trix's mental condition on that date may be determined from lay opinion testimony based upon the witnesses' observations of the testatrix's conduct either prior or subsequent to the execution. *See id.* However, evidence of incompetency at other times has probative force only if it demonstrates that the condition persists and has some probability of being the same condition which obtained at the time of the making of the will. *Id.*

■ When the proponent offers a will for probate with a self-proving affidavit attached, the burden of proving testamentary capacity remains upon the proponent. But once the self-proved will is admitted into evidence, the proponent makes out a prima facie case that the will has been properly executed, and contestants must go forward with the evidence to overcome the prima facie case. *James v. Haupt,* 573 S.W.2d 285, 288 (Tex.Civ. App.-Tyler 1978, writ ref'd n.r.e.). The burden of proof is upon the proponent to prove that the testatrix had testamentary capacity. *Seigler v. Seigler,* 391 S.W.2d 403, 404 (Tex.1965).

The record shows that five witnesses, present when Ruby signed the 1995 Will on September 26, 1995, testified at the trial. These witnesses testified that Ruby knew her family and understood that she was signing a will. There was evidence that Ruby suffered strokes in 1993 and 1994, her physical and mental condition deteriorated, and she could not pay bills, buy groceries, or write checks in September 1995. There was testimony that Ruby had difficulty recognizing family members in September 1995. There was evidence she suffered mental and physical abuse from Jodie in September 1995. There was evidence that in 1994 Ruby told a neighbor that she spoke to her parents, who had been dead for decades, and that Ruby had other hallucinations in the six months be-

fore the November 1995 stroke. There was testimony that she "was just not in reality" and was "childlike" in September 1995. After she suffered the November 1995 stroke, she could not speak or feed herself, and she entered a nursing home in December 1995. Medical records showed that, prior to the final stroke in November 1995, she had a medical history of senile dementia, coronary heart disease, atrial fibrillation, cerebrovascular accident, kidney disease, and Alzheimer's. Considering this evidence and all the record evidence, we cannot say that the trial court's finding that Ruby lacked testamentary capacity to sign the 1995 Will is against the great weight and preponderance of the evidence. We resolve appellants' second issue against them.

## ATTORNEY'S FEES

In their third issue, Mary and Mike contend that the trial court erred in awarding attorney's fees to appellants to be recovered against Mary, Mike, and George, jointly and severally.[3] They contend there is no statutory, contractual, or equitable basis for an award of attorney's fees to appellees against them. Appellees respond that attorney's fees were appropriate here under either section 243 of the probate code or the equitable doctrine of common fund.

■■■ Generally, a prevailing party cannot recover attorney's fees from an opposing party unless permitted by statute or by contract between the parties. *Holland v. Wal–Mart Stores, Inc.*, 1 S.W.3d 91, 95 (Tex.1999) (per curiam). Because there is no contract among these parties, we consider whether section 243 provides a basis for appellees' recovery of attorney's

fees. The availability of attorney's fees under a particular statute is a question of law for the court. *Id.* at 94.

Section 243 provides for an allowance in defending a will:

> When any person designated as executor in a will or an alleged will, or as administrator with the will or alleged will annexed, defends it or prosecutes any proceeding in good faith, and with just cause, for the purpose of having the will or alleged will admitted to probate, whether successful or not, he shall be allowed out of the estate his necessary expenses and disbursements, including reasonable attorney's fees, in such proceedings. When any person designated as a devisee, legatee, or beneficiary in a will or an alleged will, or as administrator with the will or alleged will annexed, defends it or prosecutes any proceeding in good faith, and with just cause, for the purpose of having the will or alleged will admitted to probate, whether successful or not, he may be allowed out of the estate his necessary expenses and disbursements, including reasonable attorney's fees, in such proceedings.

TEX. PROB.CODE ANN. § 243 (Vernon 2003).

■■■ The statute provides that reasonable attorney's fees are "allowed out of the estate." The estate at issue here is Ruby's estate. However, the court ordered recovery of attorney's fees against Mary, Mike, and George, jointly and severally, not out of Ruby's estate. Thus, even assuming any appellee met the other requirements of section 243, this statute does not provide a legal basis for awarding attorney's fees against appellants. Moreover, appellees' reliance on *Reames v. Reames*, 604 S.W.2d

---

3. In their issue statement, appellants contend the trial court erred in awarding costs of court against them. However, their arguments concern only attorney's fees. Because appellants do not make any argument as to costs of court, we do not consider those costs further.

335 (Tex.Civ.App.-Dallas 1980, no writ), is misplaced. In *Reames*, attorney's fees were allowed by the family code and were awarded to the prevailing party as costs pursuant to rule of civil procedure 131. *Id.* at 336–37; TEX.R. CIV. P. 131. These provisions do not apply in this case. Appellees are not entitled to attorney's fees pursuant to the probate code.

We next consider whether appellees are entitled to attorney's fees pursuant to the common fund doctrine. Under the common fund doctrine, the court may allow reasonable attorney's fees to a litigant who, at his own expense, has maintained a suit which creates a fund benefitting other parties as well as himself. *Lancer Corp. v. Murillo*, 909 S.W.2d 122, 126 (Tex.App.-San Antonio 1995, no writ) (citing *Knebel v. Capital Nat'l Bank*, 518 S.W.2d 795, 799–801 (Tex.1974)). The common fund doctrine is based on the principle that those receiving the benefits of the suit should bear their fair share of the expenses. *Id.* This case is distinguishable from *Lancer Corp.* because the probate code provides a statutory basis for an award of attorney's fees. *See id.* Therefore, the equitable principles in *Lancer Corp.* do not apply here.

Because we conclude that appellees are not entitled to attorney's fees and costs, we sustain appellants' third issue.

CONCLUSION

Because of our disposition of appellants' third issue, we reverse that part of the judgment ordering that appellees recover attorney's fees against Mary and Mike and render judgment that appellees take nothing by way of attorney's fees from Mary and Mike. We further conclude that the rights of Mary and Mike, as appealing parties, and George, as a nonappealing party, are so interwoven or dependent on each other that reversal of the entire judgment as to attorney's fees is required when Mary's and Mike's part is reversed and rendered. *See Belz v. Belz*, 667 S.W.2d 240, 243–44 (Tex.App.-Dallas 1984, writ ref'd n.r.e.) (citing *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160, 166 (Tex.1982)). Accordingly, we also reverse that part of the judgment ordering that appellees recover attorney's fees against George and render judgment that appellees take nothing by way of attorney's fees from George. In all other respects, the trial court's judgment is affirmed.