NO. 07-10-0151-CV

 IN THE COURT OF APPEALS

 FOR THE SEVENTH DISTRICT OF TEXAS

 AT AMARILLO

 PANEL C

 JUNE 14, 2011

 IN THE ESTATE OF JAMES E. CAMPBELL, DECEASED

 FROM THE COUNTY COURT AT LAW NO. 2 OF JOHNSON COUNTY[1]

 NO. P200919946; HONORABLE JERRY D. WEBBER, JUDGE

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

 OPINION

 Appellant, Eva Brown, appeals from an order permitting the will
of James E. Campbell to be admitted to probate as a muniment of title.
 Brown asserts the trial court erred by admitting Campbell's will to
probate because (1) the evidence was legally and factually
insufficient to establish that the proponent of the will, Danny Ray
Rumsey, Appellee, was not in "default" for failing to file the will
for probate within four years of the death of the testator as required
by § 73(a) of the Texas Probate Code,[2] and (2) the trial court
erred, as a matter of law, by concluding that the will was properly
admissible to probate as a muniment of title. We affirm.

 Background

 James E. Campbell was first married in 1945 and fathered four
children. Brown is Campbell's daughter by that first marriage. He
was divorced in 1958, and subsequently married Freda, who already had
children. Rumsey is one of Campbell's two stepsons from that second
marriage. In January 1977, Campbell and Freda both executed wills
using the same witnesses. Campbell's will provided that, if Freda
survived him, she would receive all his property and estate. Campbell
also appointed Freda as his Independent Executrix. In the event Freda
predeceased Campbell, his will provided that his two stepsons would
share equally in his estate and Rumsey would serve as his Independent
Executor. His will further "direct[ed] that no action be taken in the
County Court or any other court relative to this will or my estate,
except to probate the will and return an inventory, appraisement and
list of claims."

 In January 2002, Campbell passed away. At the time of his
death, Campbell was survived by his wife, Freda, and they owned real
property in Johnson County, Texas. Freda did not submit Campbell's
will for probate and, approximately six years later in October 2008,
she passed away. In July 2009, Rumsey sought to probate Campbell's
will as a muniment of title. Brown subsequently filed an answer and
opposition to the probate of that will asserting that Rumsey was in
default for failing to offer the will for probate within four years of
Campbell's death.

 On December 17, 2009, the trial court held a hearing on Rumsey's
application to determine whether Campbell's will should be offered to
probate. Rumsey testified that, in December 2008, he and his brother,
Phillip, went to Freda's house to look around and see if there was
anything they needed to take care of due to her passing. They found
Campbell's and Freda's wills in a lock box in Freda's office.
Thereafter, Rumsey sought to probate Campbell's will as a muniment of
title.

 Rumsey testified he first became aware of Campbell's will when
he discovered it in Freda's lock box in December of 2008. Until then,
he had made no inquiry into whether Campbell even had a will. Rumsey
described his mother as being fairly organized, private and
meticulous. He concluded that Freda must have had knowledge of
Campbell's will because she kept it in a lock box containing her own
will and he assumed she could have probated the will.

 Brown testified Freda knew her husband executed a will in
January 1977 and kept all her documents in a fireproof safe box. She
also testified that Freda was very organized. After Campbell's death,
Brown accompanied Freda to a bank to open a safety deposit box. Brown
waited in the car until Freda returned carrying a money bag containing
papers. Brown asked about her father's insurance and whether he had a
will. Freda never answered but instead handed Brown two documents --
her father's "do-not-resuscitate" certificate and a military
certificate dated in the 1940s.

 In January 2010, the trial court issued an order admitting
Campbell's will to probate finding that, although more than four years
had elapsed between Campbell's date of death and the application for
probate, Rumsey "[was] not in default." Brown subsequently requested
that the trial court make findings of fact and conclusions of law,
and, in February 2010, the trial court responded. In its findings of
fact, the trial court found, in pertinent part, that Rumsey "was not
in possession of the will or aware of the will prior to December 2008"
and "[did] not know why the will was not filed for probate."
Accordingly, the trial court concluded as a matter of law that Rumsey,
the party applying for probate of the will, "was not in default for
failing to offer Decedent's will for probate within four years of the
date of Decedent's death." This appeal followed.

 Applicable Law

 In pertinent part, § 73 of the Texas Probate Code provides as
follows:

 (a) No will shall be admitted to probate after the lapse of four
 years from the death of the testator unless it be shown by proof
 that the party applying for such probate was not in default in
 failing to present same for probate within four years aforesaid;
 and in no case shall letters testamentary be issued where a will
 is admitted to probate after the lapse of four years from the
 death of the testator.

(Emphasis added).

 The language of § 73(a) was added to the Revised Civil Statutes
in the 1879 revision of article 3248 and has remained unchanged since
that time.[3] See Abrams v. Ross' Estate, 250 S.W. 1019, 1021 (Tex.
Comm'n App. 1923).[4] One purpose of the statute is to impose a
reasonable limit on the time in which the property of a person dying
testate should be distributed among his legatees, after payment of his
or her debts. In the Estate of Rothrock, 312 S.W.3d 271, 274
(Tex.App.--Tyler 2010, no pet.) (citing Hodge v. Taylor, 87 S.W.2d
533, 535 (Tex.Civ.App.--Fort Worth 1935, writ dism'd)). In addition,
a person having custody of a will is charged with the knowledge that
it must be filed for probate within the statutory period in order to
rely on it, whether the necessity for doing so is apparent or not.
Id., 312 S.W.3d at 274 (citing St. Mary's Orphan Asylum of Tex. v.
Masterson, 57 Tex.Civ.App. 646, 654, 122 S.W. 587, 591 (Tex.Civ.App.--
San Antonio 1909, writ ref'd)). But see Kamoos v. Woodward, 570
S.W.2d 6, 8-9 (Tex.App.--San Antonio 1978, writ ref'd n.r.e.) (holding
that proponent of will was not in default for failing to present the
will for probate within four years of the testator's death where due
to the nature of the property of which she was aware and her limited
resources, she didn't think it necessary to probate the will).

 In the context of § 73(a) "default" means the failure to probate
a will due to the absence of reasonable diligence on the part of the
party offering the instrument. Schindler v. Schindler, 119 S.W.3d
923, 929 (Tex.App.--Dallas 2003, pet. denied) (citing House v. House,
222 S.W. 322, 325 (Tex.Civ.App.--Texarkana 1920, writ dism'd w.o.j.);
Kamoos, 570 S.W.2d at 8. The burden is on the party applying for
probate to show he or she was not in "default" by failing to present a
will for probate within the proper time. In the Estate of Rothrock,
312 S.W.3d at 274. The question of whether the party applying for
probate is in default is ordinarily a question of fact for the trial
court. Kamoos, 570 S.W.2d at 7-8 (citing Armstrong v. Carter, 291
S.W. 626 (Tex.Civ.App.--Waco 1927, no writ). In Armstrong, the Waco
Court said:

 Under [the prior statute] it is provided that a will may be
 probated after four years, if it is shown that the party applying
 for such probate was not in default in offering same for probate
 before the four years had elapsed. Clearly, the intention of the
 Legislature was to lodge with the trial court or jury the power
 to determine as a question of fact, where there is any evidence
 raising the issue, whether there was a default. The tendency of
 our courts has been from the earliest decisions to permit wills
 to be filed after the four-year period, where there is any
 evidence of a probative force which would excuse the failure to
 offer the will sooner.

(Citations omitted). Id., 291 S.W. at 627.

 Generally, a party applying for probate would not be considered
personally in default if he or she did not know of the existence of
the will provided such proponent was not negligent in failing to
discover whether there was a will. Schindler, 119 S.W.3d at 929.
Furthermore, § 73(a) has repeatedly been interpreted as providing that
the default of another does not preclude a non-defaulting applicant
from offering a will for probate as a muniment of title. In re
Williams, 111 S.W.3d 259, 263 (Tex.App.--Texarkana 2003, no pet.);
Masterson, 122 S.W. at 591 (holding that the party applying for
probate must be judged by his own conduct and circumstances in
evaluating whether his burden has been met regarding a finding that he
is not in "default" for failing to present a will for probate within
the proper time). But see Brown v. Byrd, 512 S.W.2d 758, 760-61
(Tex.Civ.App.--Tyler 1974, no writ) (finding that, if any devisee was
in default, such default would bar his or her descendants from any
right to have such will probated); Abrams, 250 S.W. at 1019; Faris v.
Faris, 138 S.W.2d 830 (Tex.Civ.App. Dallas 1940, writ ref'd); and Matt
v. Ward, 255 S.W. 794 (Tex.Civ.App.--Fort Worth 1923, writ ref'd).

 Standard of Review - Issue One

 By her first issue, Brown contends the evidence was legally and
factually insufficient to establish that Rumsey was not in "default"
for failing to file Campbell's will for probate within four years of
his death. In conducting a legal sufficiency review,[5] we must
consider the evidence in the light most favorable to the challenged
finding, indulge every reasonable inference to support it; City of
Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005), and credit
favorable evidence if a reasonable factfinder could and disregard
contrary evidence unless a reasonable factfinder could not. Id. at
827. A challenge to legal sufficiency will be sustained when, among
other things, the evidence offered to establish a vital fact does not
exceed a scintilla.[6] Kroger Tex. Ltd. P'ship v. Suberu, 216 S.W.3d
788, 793 (Tex. 2006). Furthermore, so long as the evidence falls
within the zone of reasonable disagreement, we may not invade the role
of the factfinder, who alone determines the credibility of witnesses,
the weight to be given their testimony, and whether to accept or
reject all or part of their testimony. City of Keller, 168 S.W.3d at
822. The final test for legal sufficiency must always be whether the
evidence at trial would enable reasonable and fair-minded people to
reach the verdict under review. Id. at 827.

 An assertion that the evidence is factually insufficient to
support a fact finding means that the evidence supporting the finding
is so weak or the evidence to the contrary is so overwhelming that the
answer should be set aside and a new trial ordered. Garza v. Alviar,
395 S.W.2d 821, 823 (Tex. 1965). In reviewing factual sufficiency,
the reviewing court must consider, examine and weigh all of the
evidence in the record. Maritime Overseas Corp. v. Ellis, 971 S.W.2d
402, 406-07 (Tex. 1998), cert. denied, 525 U.S. 1017, 119 S.Ct. 541,
142 L.Ed.2d 450 (1998). In doing so, the court no longer considers
the evidence in the light most favorable to the finding; instead, the
court considers and weighs all the evidence, and sets aside the
disputed finding only if it is so contrary to the great weight and
preponderance of the evidence as to be clearly wrong and unjust. Id.
at 407; Gooch v. American Sling Co., 902 S.W.2d 181, 183-84
(Tex.App.(Fort Worth 1995, no writ).

 Analysis

 Because Rumsey filed the application to probate Campbell's will
more than four years after Campbell's death, it was his burden to show
that he exercised reasonable diligence in offering the will for
probate, i.e., that he was not in "default." Brown's first issue
contends the trial court erred in its findings of fact because Rumsey
failed to meet that burden.

 Here, the evidence shows that Rumsey first discovered his
stepfather's will in December of 2008, when he opened his mother's
lock box shortly after her death. The evidence further shows that
prior to that discovery he was unaware of a need to probate that
will[7] and that he offered the will for probate within seven months
of its discovery. Considering all of the evidence in the light most
favorable to the judgment, we believe a reasonable and fair-minded
jurist could have found that Rumsey was reasonably diligent and,
therefore, not in default for failing to present his stepfather's will
for probate within the time allowed by § 73(a). Furthermore, we do
not believe that the finding that Rumsey was not in default is so
contrary to the great weight and preponderance of the evidence as to
be clearly wrong and manifestly unjust. Accordingly, we find that the
evidence presented was both legally and factually sufficient to
establish that Rumsey was not in "default" for failing to file the
will for probate within four years of Campbell's death. Issue one is
overruled.

 Standard of Review - Issue Two

 Brown's second issue contends the trial court erred in its
conclusions of law by misapplying the law to the facts. Brown asserts
the trial court erred when it admitted Campbell's will to probate
because more than four years lapsed between Campbell's death in 2002
and Rumsey's application for probate in 2009. In support of her
argument, she contends that because Freda was in default for having
possession of Campbell's will for six years after his death and never
probating it, then Rumsey's attempt to probate that will should be
barred because he is in no better position than his mother.[8]
Because Freda did not probate Campbell's will, Brown asserts Campbell
is considered to have died intestate and Rumsey is entitled to no
greater share from Campbell's estate than his mother was entitled as
an heir-at-law. Specifically, Brown contends the trial court made an
incorrect conclusion of law by failing to attribute Freda's lack of
diligence to Rumsey.

 Rumsey contends that Freda's default cannot be imputed to him
because, as the proponent of Campbell's will, the proper issue is
whether he defaulted, not whether Freda defaulted. Because he was
unaware of Campbell's will until its discovery in Freda's lockbox in
December of 2008, and he offered it for probate within a reasonable
time of his acquiring an interest in the property and learning of the
existence of Campbell's will, he is not in "default" within the
meaning of § 73(a). Accordingly, Rumsey asserts the trial court
properly found that he was not in default.

 A trial court's conclusions of law are reviewed de novo. BMC
Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002).
An appellant may not challenge a trial court's conclusions of law for
factual sufficiency; however, the reviewing court may review the trial
court's legal conclusions drawn from the facts to determine their
correctness. Neufeld v. Hudnall, No. 07-09-00350-CV, 2010 Tex. App.
LEXIS 5601, at *4 (Tex.App.—Amarillo July 16, 2010, pet. denied)
(mem.op.); Mustang Amusements, Inc. v. Sinclair, No. 10-07-00362-CV,
2009 Tex. App. LEXIS 8338, at *8-9 (Tex.App.—Waco Oct. 28, 2009, no
pet.) (mem. op.).

 Analysis

 In taking the position that the trial court erred by failing to
attribute Freda's lack of diligence to Rumsey, Brown relies heavily
upon two cases: In re Estate of Williams, 111 S.W.3d 259, 263
(Tex.App.--Texarkana 2003, no pet.), and Schindler v. Schindler, 119
S.W.3d 923, 929 (Tex.App.--Dallas 2003, pet. denied). As more fully
discussed below, both Williams and Schindler involve fact situations
where the title to real property is impacted by events occurring after
the date of death of the testator but before the application for
probate, where admitting the will to probate operates so as to work an
injustice pertaining to the ownership of that property. Because court
decisions dealing with this issue have shown considerable disarray and
because we believe that both cases relied upon by Brown are
distinguishable from the facts of this case, we conclude that our
decision is not controlled by their holdings.

 In re Estate of Williams

 We believe that the holding in Williams does not support Brown's
conclusion. Brown cites Williams for the proposition that "if any
heir or devisee was in default, such default would bar his or her
descendants or legatees from any right to have such will probated."
However, a careful reading of the opinion shows this was not the
holding of the court. In Williams, the Texarkana Court clearly states
that "[o]nly the default of the party applying for the probate of the
will is an issue." In that case, C. O. Williams applied for and
obtained probate of the will of his father, C. F. Williams, eighteen
years after his death. In reversing the decision of the trial court
and denying probate of the will, the appellate court said, "[b]ecause
C. O. was in default in failing to present the will within the four-
year period, the trial court erred in admitting the will to probate."
In the final analysis, no default was imputed to anyone and the will
in question was denied probate because the party applying for probate
of the will was himself in default.

 Schindler v. Schindler

 As to Schindler, while we acknowledge the Dallas Court of
Appeals did state, "if any heir or devisee was in default, such
default would bar his or her descendants or legatees from any right to
have such will probated," 119 S.W.3d at 929, we do not believe that
this opinion, nor the three cases cited in support of this
statement,[9] should be read as mandating the inflexible, automatic
imputation of default in every case. Under that standard, before a
will could be probated as a muniment of title more than four years
after the death of the testator, the proponent of a will would have
the burden of showing that every person from whom he or she inherited
an interest was not in default. Such a requirement would be contrary
to the long standing practice in Texas of admitting wills to probate
as a muniment of title, more than four years after the testator's
death, where to do so would not work an injustice and the proponent of
the will can establish reasonable diligence on his or her part alone
in offering the will for probate. See Kamoos, 570 S.W.2d at 7.

 The dispute in Schindler involved the probate of the second will
of Ruby Schindler. There, the only non-defaulting proponent stood to
inherit property that had previously passed to other devisees in
accordance to the terms of Ruby's earlier probated original will.
Because the proponent's putative predecessor in title had not only
"defaulted" in offering the second will for probate, but had also
actually probated the original will, in order to avoid an unjust
result, the trial court attributed the lack of diligence on the part
of the proponent's predecessor in title to the proponent. Those facts
alone significantly differentiate Schindler from the facts of this
case.

 In Abrams, forty-nine years after the death of the testator,
the trial court denied probate of the will of Sarah Ross. The
intermediate appellate court reversed that decision on procedural
grounds and remanded the matter to the trial court so that further
testimony could be offered pertaining to the diligence of the will
proponents and the standing of the will contestants. In affirming the
decision of the intermediate appellate court to remand the matter to
the trial court for further proceedings, the Texas Commission of
Appeals offered, as dicta, an opinion as to future burden the
proponents faced in establishing that they were not in default for
failing to timely offer the will for probate. Due to events affecting
title to real property the subject of the probate estate, which
occurred during the intervening forty-nine years, the Commission
suggested that the default of a predecessor in title would bar his or
her descendants from any right to have the will probated. Under the
facts of that case, a contrary result would have worked an injustice.

 In Faris, the testator died leaving a will that bequeathed his
entire estate to his wife, Sophia. With full knowledge of the
existence of the will, Sophia put it in her lock box where it remained
until her death, nearly twenty years later. After her death,
Ellsworth Faris, her son and the proponent of the will, withdrew the
will from his mother's lock box and offered it in probate. The court
of appeals affirmed the trial court's decision to deny probate of the
will as a muniment of title holding that Sophia had abandoned any
rights she might have had under the will by not offering it for
probate while it was in her possession. The court reasoned that "it
would be against the public policy of this State to allow a will to be
probated some nineteen years after the death of the testator . . . ."
Faris, 138 S.W.2d at 831. In its formal "Findings of Fact," the trial
court found that Ellsworth also had knowledge of the existence of the
will during that critical nineteen-year period. Under these
circumstances, because it could be said that the proponent of the will
also failed to use reasonable diligence in offering the will for
probate, the court's decision did not necessarily turn on the transfer
of default from Sophia to her descendant.

 Finally, in Matt v. Ward, based on the principle that an heir
occupies the place of his or her ancestor, the appellate court
concluded that because the proponent's mother was in default, the
proponent would be precluded from probating a will after four years.
In that case, unlike here, the trial court denied probate of the will
after the proponent unsuccessfully argued that the dicta in Abrams did
not control.

 Because we believe that the strict application of the above-
referenced quote from Schindler misconstrues § 73(a), misapplies the
authorities cited, and is contrary to a great body of law allowing a
non-defaulting proponent to offer a will for probate more than four
years after the death of the testator when intervening events would
not work an injustice or frustrate the intent of the testator, we
decline to apply the holding of our sister court to the facts of this
case and, instead, choose to follow Armstrong, Kamoos and their
progeny.

 Accordingly, we are unable to say that the trial court
erroneously applied the law to the facts of this case. Issue two is
overruled.

 Conclusion

 The trial court’s judgment is affirmed.

 Patrick A. Pirtle
 Justice
-----------------------
[1]Originally appealed to the 10th Court of Appeals (Waco), this case
was transferred to this Court by the Texas Supreme Court pursuant to
its docket equalization efforts. See Tex. Gov(t Code Ann. ( 73.001
(West 2005). We are unaware of any conflict between precedent of the
10th Court of Appeals and that of this Court on any relevant issue.
See Tex. R. App. P. 41.3.

[2]See Tex. Prob. Code Ann. § 73(a) (West 2003). For convenience,
throughout the remainder of this opinion, references to the provisions
of the Texas Probate Code will be cited simply as "section ____"
and/or "§ ____."

[3]We note that in enacting § 256.003(a) of the Estates Code, the
Legislature has slightly altered the language that has now been in use
for over 130 years. See Act of May 26, 2009, 81st Leg., R.S., ch.
680, 2009 Tex. Gen. Laws 1512, effective January 1, 2014.

[4]As discussed more fully hereinbelow, the precedential value of this
opinion is subject to some debate. Although some citations to this
opinion have indicated that the Texas Supreme Court took no action on
the decision of the Texas Commission of Appeals, other citations have
indicated that the opinion of the Commission was "adopted," while
still others have indicated that only the judgment of the Commission
was adopted. The better reasoned view is that the Supreme Court took
no action. Therefore, it cannot be stated with certainty whether the
reasoning or specific holding of the Commission was approved or
adopted by the Texas Supreme Court. See The Greenbook: Texas Rules of
Form 5.2 (Texas Law Review Ass'n ed., 12th ed. 2010).

[5]When both legal and factual sufficiency challenges are raised on
appeal, the reviewing court must first examine the legal sufficiency
of the evidence. See Glover v. Tex. Gen. Indemnity Co., 619 S.W.2d
400, 401 (Tex. 1981).

[6]Evidence does not exceed a scintilla if it is "so weak as to do no
more than create a mere surmise or suspicion" that the fact exists.
Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004).

[7]Prior to Freda's death Rumsey was neither an executor nor an
"interested party" in Campbell's estate. Therefore, prior to her
death, Rumsey did not have the authority to apply to have Campbell's
will probated. See Tex. Prob. Code Ann. § 76 (West 2003).

[8]It should be noted that in its formal Findings of Fact and
Conclusions of Law the trial court never specifically found that Freda
was in default and Brown never requested additional findings of fact
or conclusions of law.

[9]See Abrams, 250 S.W. at 1022; Faris, 138 S.W.2d at 832; and Matt,
255 S.W. at 795-96.