NO. 07-10-0151-CV

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL C

 

JUNE 14,
2011



 

 



 

 

IN THE ESTATE OF JAMES E. CAMPBELL, DECEASED 



 

 



 

 FROM THE COUNTY COURT AT LAW NO. 2 OF
JOHNSON COUNTY[1]

 

NO. P200919946; HONORABLE JERRY D. WEBBER, JUDGE



 

 



 

Before QUINN, C.J., and  HANCOCK and
PIRTLE, JJ.

OPINION


 

            Appellant, Eva
Brown, appeals from an order permitting the will of James E. Campbell to be
admitted to probate as a muniment of title. 
Brown asserts the trial court erred by admitting Campbell's will to
probate because (1) the evidence was legally and factually insufficient to establish
that the proponent of the will, Danny Ray Rumsey, Appellee, was not in
"default" for failing to file the will for probate within four years
of the death of the testator as required by § 73(a) of the Texas Probate Code,[2] and (2) the trial court
erred, as a matter of law, by concluding that the will was properly admissible
to probate as a muniment of title.  We affirm.  

Background

            James E. Campbell
was first married in 1945 and fathered four children.  Brown is Campbell's daughter by that first
marriage.  He was divorced in 1958, and subsequently
married Freda, who already had children. 
Rumsey is one of Campbell's two stepsons from that second marriage.  In January 1977, Campbell and Freda both executed
wills using the same witnesses.  Campbell's will provided
that, if Freda survived him, she would receive all his property and
estate.  Campbell also appointed Freda as
his Independent Executrix.  In the event
Freda predeceased Campbell, his will provided that his
two stepsons would share equally in his estate and Rumsey would serve as his
Independent Executor.  His will further
"direct[ed] that no action be taken in the County
Court or any other court relative to this will or my estate, except to probate
the will and return an inventory, appraisement and list of claims." 

            In January 2002, Campbell passed
away.  At the time of his death, Campbell
was survived by his wife, Freda, and they owned real property in Johnson
County, Texas.  Freda did not submit
Campbell's will for probate and, approximately six years later in October 2008,
she passed away.  In July 2009, Rumsey
sought to probate Campbell's will as a muniment of title.  Brown subsequently filed an answer and opposition
to the probate of that will asserting that Rumsey was in default for failing to
offer the will for probate within four years of Campbell's death.

            On December 17, 2009, the trial
court held a hearing on Rumsey's application to determine whether Campbell's
will should be offered to probate.  Rumsey
testified that, in December 2008, he and his brother, Phillip, went to Freda's
house to look around and see if there was anything they needed to take care of due
to her passing.  They found Campbell's
and Freda's wills in a lock box in Freda's office.  Thereafter, Rumsey sought to probate
Campbell's will as a muniment of title.  

            Rumsey testified he first became
aware of Campbell's will when he discovered it in Freda's lock box in December
of 2008.  Until then, he had made no
inquiry into whether Campbell even had a will. 
Rumsey described his mother as being fairly organized, private and
meticulous.  He concluded that Freda must
have had knowledge of Campbell's will because she kept it in a lock box
containing her own will and he assumed she could have probated the will.  

            Brown testified Freda knew her
husband executed a will in January 1977 and kept all her documents in a
fireproof safe box.  She also testified
that Freda was very organized.  After
Campbell's death, Brown accompanied Freda to a bank to open a safety deposit
box.  Brown waited in the car until Freda
returned carrying a money bag containing papers.  Brown asked about her father's insurance and
whether he had a will.  Freda never
answered but instead handed Brown two documents -- her father's "do-not-resuscitate"
certificate and a military certificate dated in the 1940s. 

            In January 2010, the trial court
issued an order admitting Campbell's will to probate finding that, although
more than four years had elapsed between Campbell's date of death and the application
for probate, Rumsey "[was] not in default."  Brown subsequently requested that the trial
court make findings of fact and conclusions of law, and, in February 2010, the
trial court responded.  In its findings
of fact, the trial court found, in pertinent part, that Rumsey "was not in
possession of the will or aware of the will prior to December 2008" and
"[did] not know why the will was not filed for probate."  Accordingly, the trial court concluded as a
matter of law that Rumsey, the party applying for probate of the will, "was
not in default for failing to offer Decedent's will for probate within four
years of the date of Decedent's death." 
This appeal followed.

Applicable Law

            In pertinent part, § 73 of the Texas Probate Code
provides as follows:

(a)  No will shall be admitted to probate after
the lapse of four years from the death of the testator unless it be shown by
proof that the party applying for such
probate was not in default in failing to present same for probate within
four years aforesaid; and in no case shall letters testamentary be issued where
a will is admitted to probate after the lapse of four years from the death of
the testator. 

(Emphasis added).

            The
language of § 73(a) was added to the Revised Civil Statutes in the 1879 revision
of article 3248 and has remained unchanged since that time.[3]  See
Abrams v. Ross' Estate, 250 S.W. 1019, 1021 (Tex. Comm'n App. 1923).[4]  One purpose of the statute is to impose a
reasonable limit on the time in which the property of a person dying testate
should be distributed among his legatees, after payment of his or her
debts.  In the Estate of Rothrock, 312 S.W.3d
271, 274 (Tex.App.--Tyler 2010, no pet.) (citing
Hodge v. Taylor, 87 S.W.2d 533, 535
(Tex.Civ.App.--Fort Worth 1935, writ dism'd)). 
In addition, a person having custody of a will is charged with the
knowledge that it must be filed for probate within the statutory period in
order to rely on it, whether the necessity for doing so is apparent or not.  Id., 312
S.W.3d at 274 (citing St. Mary's Orphan
Asylum of Tex. v. Masterson, 57 Tex.Civ.App. 646, 654, 122 S.W. 587, 591
(Tex.Civ.App.--San Antonio 1909, writ ref'd)). 
But see Kamoos v. Woodward,
570 S.W.2d 6, 8-9 (Tex.App.--San Antonio 1978, writ ref'd n.r.e.) (holding that proponent of will was not in default for
failing to present the will for probate within four years of the testator's
death where due to the nature of the property of which she was aware and her
limited resources, she didn't think it necessary to probate the will).    

            In the context of § 73(a) "default"
means the failure to probate a will due to the absence of reasonable diligence
on the part of the party offering the instrument.  Schindler
v. Schindler, 119 S.W.3d 923, 929 (Tex.App.--Dallas 2003, pet. denied)
(citing House v. House, 222 S.W. 322,
325 (Tex.Civ.App.--Texarkana 1920, writ dism'd w.o.j.); Kamoos, 570 S.W.2d at 8.  The
burden is on the party applying for probate to show he or she was not in "default"
by failing to present a will for probate within the proper time.  In the Estate of Rothrock, 312 S.W.3d at 274.  The
question of whether the party applying for probate is in default is ordinarily
a question of fact for the trial court.  Kamoos, 570 S.W.2d at 7-8 (citing Armstrong v. Carter, 291 S.W. 626 (Tex.Civ.App.--Waco
1927, no writ).  In Armstrong, the Waco Court said:

Under [the prior statute] it
is provided that a will may be probated after four years, if it is shown that
the party applying for such probate was not in default in offering same for
probate before the four years had elapsed. 
Clearly, the intention of the Legislature was to lodge with the trial
court or jury the power to determine as a question of fact, where there is any
evidence raising the issue, whether there was a default.  The tendency of our courts has been from the
earliest decisions to permit wills to be filed after the four-year period,
where there is any evidence of a probative force which would excuse the failure
to offer the will sooner. 

(Citations omitted).  Id., 291
S.W. at 627.

            Generally, a party
applying for probate would not be considered personally in default if he or she
did not know of the existence of the will provided such proponent was not negligent
in failing to discover whether there was a will.  Schindler,
119 S.W.3d at 929. 
Furthermore, § 73(a) has repeatedly been interpreted as providing that
the default of another does not preclude a non-defaulting applicant from
offering a will for probate as a muniment of title.  In re
Williams, 111 S.W.3d 259, 263 (Tex.App.--Texarkana 2003, no pet.); Masterson, 122
S.W. at 591 (holding that the party
applying for probate must be judged by his
own conduct and circumstances in evaluating whether his burden has been met regarding a finding that he
is not in "default" for failing to present a will for probate within
the proper time).  But see Brown v. Byrd, 512 S.W.2d 758, 760-61 (Tex.Civ.App.--Tyler
1974, no writ) (finding that, if any devisee was in default, such default would
bar his or her descendants from any right to have such will probated); Abrams, 250 S.W. at 1019; Faris
v. Faris, 138 S.W.2d 830
(Tex.Civ.App. Dallas 1940, writ ref'd); and Matt
v. Ward, 255 S.W. 794 (Tex.Civ.App.--Fort Worth 1923, writ ref'd).  

Standard of Review -
Issue One

            By her first issue, Brown contends
the evidence was legally and factually insufficient to establish that Rumsey
was not in "default" for failing to file Campbell's will for probate
within four years of his death.  In
conducting a legal sufficiency review,[5] we must
consider the evidence in the light most favorable to the challenged finding,
indulge every reasonable inference to support it; City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005), and
credit favorable evidence if a reasonable factfinder could and disregard
contrary evidence unless a reasonable factfinder could not.  Id. at 827.  A
challenge to legal sufficiency will be sustained when, among other things, the
evidence offered to establish a vital fact does not exceed a scintilla.[6]  Kroger Tex. Ltd. P'ship v. Suberu, 216 S.W.3d 788, 793 (Tex. 2006).  Furthermore, so long as the evidence falls
within the zone of reasonable disagreement, we may not invade the role of the
factfinder, who alone determines the credibility of witnesses, the weight to be
given their testimony, and whether to accept or reject all or part of their
testimony.  City of Keller, 168 S.W.3d at 822.  The final test for legal sufficiency must always be whether
the evidence at trial would enable reasonable and fair-minded people to reach
the verdict under review.  Id. at 827.

An assertion that the evidence is
factually insufficient to support a fact finding means that the evidence
supporting the finding is so weak or the evidence to the contrary is so
overwhelming that the answer should be set aside and a new trial ordered.  Garza v. Alviar, 395
S.W.2d 821, 823 (Tex. 1965).  In
reviewing factual sufficiency, the reviewing court must consider, examine and
weigh all of the evidence in the record. 
Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex.
1998), cert. denied, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450
(1998).  In doing so, the court no longer
considers the evidence in the light most favorable to the finding; instead, the
court considers and weighs all the evidence, and sets aside the disputed
finding only if it is so contrary to the great weight and preponderance of the
evidence as to be clearly wrong and unjust. 
Id. at 407; Gooch v. American Sling Co., 902
S.W.2d 181, 183-84 (Tex.App.BFort Worth 1995, no writ).

Analysis

            Because Rumsey
filed the application to probate Campbell's will more than four years after
Campbell's death, it was his burden to show that he exercised reasonable
diligence in offering the will for probate, i.e., that he was not in
"default."  Brown's first issue
contends the trial court erred in its findings of fact because Rumsey failed to
meet that burden.

            Here, the evidence shows that Rumsey
first discovered his stepfather's will in December of 2008, when he opened his
mother's lock box shortly after her death. 
The evidence further shows that prior to that discovery he was unaware
of a need to probate that will[7] and that he offered the
will for probate within seven months of its discovery.  Considering all of the evidence in the light
most favorable to the judgment, we believe a reasonable and fair-minded jurist
could have found that Rumsey was reasonably diligent and, therefore, not in
default for failing to present his stepfather's will for probate within the
time allowed by § 73(a).  Furthermore, we
do not believe that the finding that Rumsey was not in default is so contrary to the great weight
and preponderance of the evidence as to be clearly wrong and manifestly
unjust.  Accordingly, we find that the
evidence presented was both legally and
factually sufficient to establish that Rumsey was not in "default"
for failing to file the will for probate within four years of Campbell's
death.  Issue one is overruled.

Standard of Review - Issue Two

            Brown's second issue contends the
trial court erred in its conclusions of law by misapplying the law to the facts.  Brown asserts the trial court erred when it admitted
Campbell's will to probate because more than four years lapsed between
Campbell's death in 2002 and Rumsey's application for probate in 2009.  In support of her argument, she contends that
because Freda was in default for having possession of Campbell's will for six
years after his death and never probating it, then Rumsey's attempt to probate that
will should be barred because he is in no better position than his mother.[8]  Because Freda did not probate Campbell's
will, Brown asserts Campbell is considered to have died intestate and Rumsey is
entitled to no greater share from Campbell's estate than his mother was
entitled as an heir-at-law. 
Specifically, Brown contends the trial court made an incorrect
conclusion of law by failing to attribute Freda's lack of diligence to Rumsey.  

            Rumsey contends that Freda's default
cannot be imputed to him because, as the proponent of Campbell's will, the
proper issue is whether he defaulted,
not whether Freda defaulted.  Because he
was unaware of Campbell's will until its discovery in Freda's lockbox in
December of 2008, and he offered it for probate within a reasonable time of his
acquiring an interest in the property and learning of the existence of
Campbell's will, he is not in "default" within the meaning of §
73(a).  Accordingly, Rumsey asserts the
trial court properly found that he was not in default.   

            A trial court's conclusions of law
are reviewed de novo.  BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex.
2002).  An appellant may not
challenge a trial court's conclusions of law for factual sufficiency; however,
the reviewing court may review the trial court's legal conclusions drawn from
the facts to determine their correctness. 
Neufeld v. Hudnall, No.
07-09-00350-CV, 2010 Tex. App. LEXIS 5601, at *4 (Tex.App.—Amarillo July 16,
2010, pet. denied) (mem.op.); Mustang
Amusements, Inc. v. Sinclair, No. 10-07-00362-CV, 2009 Tex. App. LEXIS 8338,
at *8-9 (Tex.App.—Waco Oct. 28, 2009, no pet.) (mem.
op.).

Analysis

            In taking the position that the
trial court erred by failing to attribute Freda's lack of diligence to Rumsey, Brown
relies heavily upon two cases: In re
Estate of Williams, 111 S.W.3d 259, 263 (Tex.App.--Texarkana 2003, no pet.),
and Schindler v. Schindler, 119
S.W.3d 923, 929 (Tex.App.--Dallas 2003, pet. denied).  As more fully discussed below, both Williams and Schindler involve fact situations where the title to real property
is impacted by events occurring after the date of death of the testator but
before the application for probate, where admitting the will to probate
operates so as to work an injustice pertaining to the ownership of that
property.  Because court decisions
dealing with this issue have shown considerable disarray and because we believe
that both cases relied upon by Brown are distinguishable from the facts of this
case, we conclude that our decision is not controlled by their holdings.  

In re Estate of Williams 

            We believe that the holding in Williams does not support Brown's
conclusion.  Brown cites Williams for the proposition that
"if any heir or devisee was in default, such default would bar his or her
descendants or legatees from any right to have such will probated."  However, a careful reading of the opinion shows
this was not the holding of the court.  In
Williams, the Texarkana Court clearly
states that "[o]nly the default of the party applying for the probate of
the will is an issue."  In that case, C. O. Williams applied for and
obtained probate of the will of his father, C. F. Williams, eighteen years
after his death.  In reversing the decision
of the trial court and denying probate of the will, the appellate court said,
"[b]ecause C. O. was in default in failing to present the will within the
four-year period, the trial court erred in admitting the will to probate."  In the final analysis, no default was imputed
to anyone and the will in question was denied probate because the party
applying for probate of the will was himself in default.

Schindler v. Schindler

            As to Schindler, while we acknowledge the Dallas Court of Appeals did
state, "if any heir or devisee was in default, such default would bar his
or her descendants or legatees from any right to have such will probated,"
119 S.W.3d at 929, we do not believe that this opinion, nor the three
cases cited in support of this statement,[9] should be read as mandating
the inflexible, automatic imputation of default in every case.  Under that standard, before a will could be
probated as a muniment of title more than four years after the death of the
testator, the proponent of a will would have the burden of showing that every
person from whom he or she inherited an interest was not in default.  Such a requirement would be contrary to the
long standing practice in Texas of admitting wills to probate as a muniment of
title, more than four years after the testator's death, where to do so would
not work an injustice and the proponent of the will can establish reasonable
diligence on his or her part alone in offering the will for probate.  See Kamoos,
570 S.W.2d at 7.

            The dispute in Schindler involved the probate of the second will of Ruby Schindler.  There, the only non-defaulting proponent stood
to inherit property that had previously passed to other devisees in accordance
to the terms of Ruby's earlier probated original will.  Because the proponent's putative predecessor
in title had not only "defaulted" in offering the second will for
probate, but had also actually probated the original will, in order to avoid an
unjust result, the trial court attributed the lack of diligence on the part of
the proponent's predecessor in title to the proponent.  Those facts alone significantly differentiate
Schindler from the facts of this
case.  

             
In Abrams, forty-nine years
after the death of the testator, the trial court denied probate of the will of
Sarah Ross.  The intermediate appellate
court reversed that decision on procedural grounds and remanded the matter to
the trial court so that further testimony could be offered pertaining to the
diligence of the will proponents and the standing of the will contestants.  In affirming the decision of the intermediate
appellate court to remand the matter to the trial court for further proceedings,
the Texas Commission of Appeals offered, as dicta, an opinion as to future burden
the proponents faced in establishing that they were not in default for failing
to timely offer the will for probate.  Due
to events affecting title to real property the subject of the probate estate, which
occurred during the intervening forty-nine years, the Commission suggested that
the default of a predecessor in title would bar his or her descendants from any
right to have the will probated.  Under
the facts of that case, a contrary result would have worked an injustice.

            In Faris, the testator died leaving a will that bequeathed his entire
estate to his wife, Sophia.  With full
knowledge of the existence of the will, Sophia put it in her lock box where it
remained until her death, nearly twenty years later.  After her death, Ellsworth Faris, her son and
the proponent of the will, withdrew the will from his mother's lock box and
offered it in probate.  The court of
appeals affirmed the trial court's decision to deny probate of the will as a muniment of title holding that Sophia
had abandoned any rights she might have had under the will by not offering it
for probate while it was in her possession. 
The court reasoned that "it would be against the public policy of
this State to allow a will to be probated some nineteen years after the death
of the testator . . . ."  Faris, 138 S.W.2d at
831.  In its formal "Findings
of Fact," the trial court found that Ellsworth also had knowledge of the existence
of the will during that critical nineteen-year period.  Under these circumstances, because it could
be said that the proponent of the will also failed to use reasonable diligence
in offering the will for probate, the court's decision did not necessarily turn
on the transfer of default from Sophia to her descendant.

            Finally, in Matt v. Ward, based on the principle that an heir occupies the
place of his or her ancestor, the appellate court concluded that because the proponent's
mother was in default, the proponent would be precluded from probating a will
after four years.  In that case, unlike
here, the trial court denied probate of the will after the proponent
unsuccessfully argued that the dicta in Abrams
did not control.  

            Because
we believe that the strict application of the above-referenced quote from Schindler misconstrues § 73(a), misapplies
the authorities cited, and is contrary to a great body of law allowing a
non-defaulting proponent to offer a will for probate more than four years after
the death of the testator when intervening events would not work an injustice
or frustrate the intent of the testator, we decline to apply the holding of our
sister court to the facts of this case and, instead, choose to follow Armstrong, Kamoos and their progeny.  

            Accordingly, we are unable to say
that the trial court erroneously applied the law to the facts of this
case.  Issue two is overruled.

Conclusion

            The trial
court’s judgment is affirmed.

 

 

                                                                                    Patrick
A. Pirtle

                                                                                          Justice  











[1]Originally appealed to the 10th Court of Appeals
(Waco), this case was transferred to this Court by the Texas Supreme Court
pursuant to its docket equalization efforts. 
See Tex. Gov=t Code
Ann. ' 73.001 (West 2005).  We are unaware of any conflict between
precedent of the 10th Court of Appeals and that of this Court on any relevant
issue.   See Tex. R. App. P. 41.3.

 





[2]See Tex. Prob. Code Ann. § 73(a) (West
2003).   For convenience,
throughout the remainder of this opinion, references to the provisions of the
Texas Probate Code will be cited simply as "section ____" and/or  "§
____."





[3]We
note that in enacting § 256.003(a) of the Estates Code, the Legislature has
slightly altered the language that has now been in use for over 130 years.  See
Act of May 26, 2009, 81st Leg., R.S., ch. 680, 2009 Tex. Gen. Laws 1512,
effective January 1, 2014.





[4]As
discussed more fully hereinbelow, the precedential value of this opinion is
subject to some debate.  Although some
citations to this opinion have indicated that the Texas Supreme Court took no
action on the decision of the Texas Commission of Appeals, other citations have
indicated that the opinion of the
Commission was "adopted," while still others have indicated that only
the judgment of the Commission was
adopted.  The better reasoned view is
that the Supreme Court took no action. 
Therefore, it cannot be stated with certainty whether the reasoning or
specific holding of the Commission was approved or adopted by the Texas Supreme
Court.  See The Greenbook: Texas Rules of Form 5.2
(Texas Law Review Ass'n ed., 12th ed. 2010).





[5]When both legal and factual sufficiency
challenges are raised on appeal, the reviewing court must first examine the
legal sufficiency of the evidence.  See Glover v. Tex. Gen. Indemnity Co., 619 S.W.2d 400, 401 (Tex. 1981).  





[6]Evidence does not exceed a scintilla if it is
"so weak as to do no more than create a mere surmise or suspicion"
that the fact exists.  Ford Motor Co. v. Ridgway, 135 S.W.3d
598, 601 (Tex. 2004).  





[7]Prior
to Freda's death Rumsey was neither an executor nor an "interested
party" in Campbell's estate. 
Therefore, prior to her death, Rumsey did not have the authority to
apply to have Campbell's will probated.  See Tex. Prob. Code Ann. § 76 (West
2003).





[8]It
should be noted that in its formal Findings
of Fact and Conclusions of Law the trial court never specifically found
that Freda was in default and Brown never requested additional findings of fact
or conclusions of law.





[9]See Abrams, 250 S.W. at 1022; Faris, 138 S.W.2d at
832; and Matt, 255 S.W. at 795-96.