In the Matter of the ESTATE
OF Cordelia WILLIAMS,
Deceased.

No. 06–02–00125–CV.

Court of Appeals of Texas,
Texarkana.

Submitted June 20, 2003.
Decided June 27, 2003.
Rehearing Overruled July 29, 2003.

Edward D. Ellis, Ellis, Young & Tidwell, LLP, Paris, for appellant.

R.C. Slagle III, Law Office of R.C. Slagle, III, PC, Sherman, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Betty Jean Williams appeals a judgment rendered in favor of Jerry O. Williams and Gaylene Horton Plant, two of the three remaindermen under the last will and testament of C.F. and Cordelia Williams. Betty Jean contends the court erred in admitting C.F. and Cordelia's will to probate and in finding that a deed from Cordelia to her sons, C.O. Williams and K.W. Williams (Betty Jean's deceased husband), to forty-four acres of land was not valid. We sustain Betty Jean's contentions and reverse the trial court's judgment.

C.F. and Cordelia, husband and wife, executed a joint and contractual will November 25, 1977. Their estate consisted primarily of a forty-four acre tract of land

located in Fannin County. Under C.F. and Cordelia's will, the surviving spouse was to receive a life estate in the property; then, on the death of the second spouse, their sons, C.O. Williams and K.W. Williams, were to receive life estates in the property; finally, the remainder interest was to go to their three grandchildren, Joyce Mills, Jerry O. Williams, and Gaylene Horton (now Gaylene Plant).

C.F. died May 2, 1980. On December 11, 1986, Cordelia deeded the forty-four acres to C.O. and K.W. K.W. and his wife, Betty Jean, made their residence on the property, and C.O. ran cattle on the property. The testimony was conflicting concerning whether K.W. and Betty Jean moved to the property before or after the deed was given. Betty Jean testified that she knew nothing of the 1977 will at the time of the deed from Cordelia and that her husband gave valuable consideration for the property by agreeing to pay Cordelia's supplementary social security insurance for the remainder of her life. C.O. testified the deed was given from his mother to him and his brother only to keep the government from getting the property when Cordelia entered a nursing home. Cordelia died July 12, 1988. In 1992, C.O. went to an attorney in Bonham to discuss the estates of his mother and father. On June 29, 1992, C.O. signed an affidavit of heirship, stating he and K.W. were the only children of C.F. and Cordelia.

In 1998, a conflict arose between Betty Jean and Jerry, C.O.'s son and one of the remaindermen under the will, which culminated in Betty Jean ordering Jerry off the forty-four acres. After the conflict with Betty Jean, Jerry began to inquire about his grandparents' will. Jerry and C.O. went to the attorney's office to retrieve the will. This was on a Friday, and Jerry was able to pick the will up from the attorney's office the following Monday. Jerry testi-

fied he always believed there was a will and believed it had been probated. He relied on C.O. to handle the legal matters of C.F.'s and Cordelia's estates and assumed C.O. had probated the will. Likewise, Gaylene, one of C.O.'s daughters and a remainderman under the will, testified she knew there was a will, but believed her father had probated it, saying, "My father [C.O.] had always taken care of the business, and I never questioned it." Jerry testified that, after obtaining the will at the attorney's office, he took it to the courthouse, where he inquired about probating it. He and his father then went to a different attorney's office to pursue getting the will probated as a muniment of title.

On July 27, 1998, C.O. applied to have C.F. and Cordelia's will probated as a muniment of title. In his application, C.O. said he was "not in default in not offering the will for probate earlier, in that it was not known that a will existed and when found was promptly offered for probate herein, which is within a four year period after the same was found." Despite this statement, the evidence showed that C.O. always knew about his parents' will and that it was in fact kept in C.O.'s personal safety deposit box until he took it to Butler in 1992. Even so, an order admitting the 1977 will as a muniment of title was granted August 5, 1998.

At the time the will was admitted to probate, C.O.'s brother, K.W., was suffering from terminal cancer and died the following month. K.W.'s own last will and testament left everything to Betty Jean. Three months after K.W.'s death, C.O. sued Betty Jean in district court, seeking cancellation of the 1986 deed executed by Cordelia to K.W. and C.O. Betty Jean then filed a petition in probate court, contesting the probate of the 1977 will. Gaylene and Jerry filed an intervention in the

probate proceeding, asserting their rights as remaindermen under the will, contesting the validity of the 1986 deed, and challenging Betty Jean's standing to contest probate of the will. C.O. died September 11, 2001.

The probate proceedings were transferred to the district court and consolidated with the suit filed by C.O. against Betty Jean. No jury demand was made, and trial on the merits of the consolidated cases commenced before the court in December 2001, recessed, and then concluded in January 2002. The court took the matter under advisement and rendered its judgment April 26, 2002. On Betty Jean's request, the trial court made the following findings of fact and conclusions of law:

## I.

### Findings of Fact

A. That on November 25, 1977, CF Williams and Cordelia Williams by reciprocal agreement executed a joint and contractual will wherein they granted the survivor of them a life estate in all their community property (hereinafter "subject property") and upon the death of the survivor, provided and granted a subsequent life estate in the subject property to their two sons, C.O. Williams and K.W. Williams. The joint and contractual will also vested fee simple in a remainder interest in the subject property to their three grandchildren, Joyce Mills, Jerry Williams and Gaylene Horton. The contractual will were [sic] executed by the Williams [sic] and properly witnessed in accordance with Texas Statutes.

B. That the joint and contractual will executed by the Williams [sic] contained no language granting the survivor nor any life estate holders any right to convey or dispose of any property.

C. That the joint and contractual will executed by CF Williams and Cordelia Williams had not been revoked prior to the death of CF Williams.

D. That upon the death of her husband CF Williams on May 2, 1980, Cordelia Williams accepted the benefits under the joint and contractual will, that being a life estate interest in the subject property.

E. That upon the death of CF Williams, C.O. Williams, the eldest son of CF Williams, did not probate the will of his father as Cordelia Williams had the right to her life estate on the property.

F. That Cordelia Williams, a life estate holder of interest in the subject property under the joint and contractual will, executed a deed in December 1886[sic], purporting to grant a fee simple interest in the subject property to her sons, C.O. Williams and K.W. Williams which would defeat said will. The purported deed violated the provisions of the contractual will to the detriment of the remaindermens' [sic] fee simple interest.

G. That during the last few years of Cordelia Williams [sic] life, K.W. Williams and his wife, Betty Williams, lived on the subject property in a small trailer.

H. That neither K.W. Williams or [sic] his wife Betty Williams were bonafide purchasers of the subject property, nor was C.O. Williams nor could they have been as all only had a life estate interest.

I. That upon the death of Cordelia Williams, on July 10, 1988, C.O. Williams failed to probate the joint and contractual wills [sic] of his parents. However, C.O. Williams did carry the will to an attorney before the four year statute of limitations and did obtain an affidavit of

heirship on July 7, 1992, which enhanced his and his brother's life estate to a fee simple interest to the detriment of the remaindermen in contravention of the will which he had presented to the Attorney, . . . .

J. That upon learning of his father's failure to probate the wills [sic] of his grandparents in August of 1998, Jerry Williams immediately demanded that his father probate the will and moved to protect the rights of the remaindermen, namely himself, and his two sisters, Gaylene Plant and Joyce Mills by obtaining the will from [the attorney] and having . . . another local attorney . . . file it as a Muniment of Title.

K. That while C.O. Williams failed to probate the joint and contractual will of CF and Cordelia Williams, Jerry Williams and Gaylene Plant did not default in failing to timely probate the joint and contractual will of CF Williams and Cordelia Williams, and that they provided justification for the delay in probate.

L. As intervenors, Jerry Williams and Gaylene Plant had the right to intervene and assert their interests and that of their sister as Remaindermen beneficiaries.

## II.

### Conclusions of Law

A. Since the joint and contractual will of CF Williams and Cordelia Williams had been executed with the requisite formalities, the will is mutual and contractual as [a] matter of law. Said will not only set forth the testamentary disposition of property but also [was] a contract between the testators, CF Williams and Cordelia Williams. Therefore, Cordelia Williams, as the surviving party to the contractual will, who also accepted the benefits thereunder, is estopped from changing its provisions.

B. Upon the death of CF Williams, Cordelia Williams possessed only a life interest in the subject property pursuant to the joint and contract [sic] will she executed with her husband. She therefore exceeded the powers granted to her under the joint will when she attempted to convey the subject property in fee simple to her sons, C.O. Williams and K.W. Williams and any such conveyance is invalid. The affidavit of heirship authorized by C.O. Williams enlarging his and his brothers [sic] life estate to a fee simple interest is also invalid.

C. Lastly, because the remainder fee interest of the Williams' [sic] grandchildren immediately vested upon the death of CF Williams, their rights are not cut off by any action or lack thereof on the part of C.O. Williams, Cordelia Williams and/or K.W. Williams. As holders of a vested remaindermen fee simple interest in the subject property, they still had the right to have the joint and contractual will of their grandparents probated as a Muniment of Title and take under the will.

A trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's answer. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994). A trial court's conclusions of law are reviewed de novo. *ASAI v. Vanco Insulation Abatement, Inc.,* 932 S.W.2d 118, 121 (Tex.App.-El Paso 1996, no writ). A factual insufficiency point requires us to examine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.* In reviewing a legal sufficiency point, we may con-

sider only the evidence and inferences that tend to support challenged findings and disregard all evidence and inferences to the contrary. *Catalina,* 881 S.W.2d at 297.

Although the trial court included in its "Findings of Fact" matters more properly belonging in its "Conclusions of Law," Betty Jean makes no challenge to those findings that are truly matters of fact. Her two points of error, however, constitute a challenge to the court's conclusions of law, which we review de novo.

Betty Jean first contends the trial court erred in admitting the will of C.F. and Cordelia Williams to probate, and hence challenges the court's conclusion that such will was properly probated.

 Under Texas law, no will shall be admitted to probate after the lapse of four years from the death of the testator unless it be shown by proof that the party applying for such probate was not in default in failing to present the will for probate within the four-year period. TEX. PROB.CODE ANN. § 73(a) (Vernon 2003). The "not in default" language of Section 73 is held to be a due diligence standard. *Brown v. Byrd,* 512 S.W.2d 753, 755 (Tex.Civ.App.-Tyler 1974, no writ). Betty Jean contends "the issue before the Trial Court was whether or not there was any evidence whatsoever to excuse C.O. Williams for not probating the will." She contends "the record is absolutely silent of any credible evidence in which the Court could possibly find that C.O. Williams was 'no[t] in default.'" Jerry and Gaylene contend, on the other hand, that the default of one proponent of a will does not cut off the right of another proponent who is not in default. *See Lutz v. Howard,* 181 S.W.2d 869, 872 (Tex.Civ.App.-Eastland 1944, no writ). Even so, says Betty Jean, in this case we should not look at whether the other parties were "not in default," because C.O. was the only person who at-

tempted to probate the will. Betty Jean is correct. Only the default of the party applying for the probate of the will is an issue. *Id.* C.O. is the party who applied to probate the will. Therefore, whether Jerry or Gaylene was in default is irrelevant, because neither of them applied to have the will probated.

Jerry and Gaylene cite *Armstrong v. Carter,* 291 S.W. 626, 627 (Tex.Civ.App.-Waco 1927, no writ), a case involving another set of children who relied on their father to handle the family's business affairs. In *Armstrong,* the last will and testament of the children's mother was kept in a trunk by their father, who handled all the business affairs of the family. The children did not question their father about the will and did not see it until after his death. *Id.* The court found the children were not in default when they filed their mother's will for probate after their father's death, even though it was five years after the death of their mother. *Id.* The facts of *Armstrong,* however, are distinguishable from the instant case because Jerry and Gaylene did not apply to probate the will; only C.O. did.

It appears from the findings of fact and conclusions of law that the trial court considered C.O. to have been in default at the time he probated the will (a finding not challenged by Betty Jean or by Jerry and Gaylene), but that such default was irrelevant to the rights of the remaindermen to probate the will. It is true that, as interested parties, Jerry and Gaylene had the right to apply to have the will probated. TEX. PROB.CODE ANN. § 76 (Vernon 2003). However, they never exercised this right. Even after Jerry learned in 1998 that C.O. had not probated the will, and even though he had the will in his personal possession and took it to the courthouse, where he inquired about probating it, neither he nor Gaylene ever applied to have the will pro-

bated. Instead, they merely encouraged their father, C.O., to probate the will. Jerry and Gaylene did intervene in the probate proceeding, but they never applied to have the will probated.

Because C.O. waited more than four years to apply to probate his parents' will, he was required to prove he was not in default, i.e., that he used due diligence. In his application to probate the will, he stated he had not known about the will. He later testified, however, he had always known about his parents' will and had even kept it in his own personal safety deposit box. Because C.O. was in default in failing to present the will within the four-year period, the trial court erred in admitting the will to probate. TEX. PROB.CODE ANN. § 73(a). Betty Jean's first contention is sustained.

In her second point of error, Betty Jean contends the trial court erred in concluding that the deed from Cordelia to C.O. and K.W., dated December 11, 1986, was not valid. The trial court and Jerry and Gaylene rely solely on the fact that C.F. and Cordelia's will was admitted to probate in their assertion that the 1986 deed was not valid. However, TEX. PROB. CODE ANN. § 94 (Vernon 2003) provides, "no will shall be effectual for the purpose of proving title to, or the right to the possession of, any real or personal property disposed of by the will, until such will has been admitted to probate." Under this provision, a will cannot be used to prove title to real property disposed of by the will until the will has been properly admitted to probate. Because the trial court erred in admitting the 1977 will to probate, Jerry and Gaylene cannot rely on the intentions evidenced by the will to prove their ownership of the property. The trial court erred in concluding that the deed from Cordelia to C.O. and K.W., dated December 11, 1986, was not valid. Bet-

ty Jean's second point of error is sustained.

We reverse the judgment of the trial court. We render judgment that Betty Jean Williams, as sole devisee of her husband, K.W. Williams, owns in fee simple an undivided one-half interest in the forty-four acres in question and that the heirs or devisees of C.O. Williams own in fee simple the other undivided one-half interest in such property.