NO. 07-10-0151-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JUNE 14, 2011

_____

IN THE ESTATE OF JAMES E. CAMPBELL, DECEASED

_____

FROM THE COUNTY COURT AT LAW NO. 2 OF JOHNSON COUNTY[1]

NO. P200919946; HONORABLE JERRY D. WEBBER, JUDGE

_____

Before QUINN, C.J., and  HANCOCK and PIRTLE, JJ.

**OPINION**

Appellant, Eva Brown, appeals from an order permitting the will of James E.
Campbell to be admitted to probate as a muniment of title.  Brown asserts the trial court
erred by admitting Campbell's will to probate because (1) the evidence was legally and
factually insufficient to establish that the proponent of the will, Danny Ray Rumsey,
Appellee, was not in "default" for failing to file the will for probate within four years of the

---

[1]Originally appealed to the 10th Court of Appeals (Waco), this case was transferred to this Court by the
Texas Supreme Court pursuant to its docket equalization efforts.  *See* Tex. Gov't Code Ann. § 73.001
(West 2005).  We are unaware of any conflict between precedent of the 10th Court of Appeals and that of
this Court on any relevant issue.  *See* Tex. R. App. P. 41.3.

death of the testator as required by § 73(a) of the Texas Probate Code,[2] and (2) the trial court erred, as a matter of law, by concluding that the will was properly admissible to probate as a muniment of title. We affirm.

**Background**

James E. Campbell was first married in 1945 and fathered four children. Brown is Campbell's daughter by that first marriage. He was divorced in 1958, and subsequently married Freda, who already had children. Rumsey is one of Campbell's two stepsons from that second marriage. In January 1977, Campbell and Freda both executed wills using the same witnesses. Campbell's will provided that, if Freda survived him, she would receive all his property and estate. Campbell also appointed Freda as his Independent Executrix. In the event Freda predeceased Campbell, his will provided that his two stepsons would share equally in his estate and Rumsey would serve as his Independent Executor. His will further "direct[ed] that no action be taken in the County Court or any other court relative to this will or my estate, except to probate the will and return an inventory, appraisement and list of claims."

In January 2002, Campbell passed away. At the time of his death, Campbell was survived by his wife, Freda, and they owned real property in Johnson County, Texas. Freda did not submit Campbell's will for probate and, approximately six years later in October 2008, she passed away. In July 2009, Rumsey sought to probate Campbell's will as a muniment of title. Brown subsequently filed an answer and opposition to the

---

[2] *See* Tex. Prob. Code Ann. § 73(a) (West 2003). For convenience, throughout the remainder of this opinion, references to the provisions of the Texas Probate Code will be cited simply as "section ____" and/or "§ ____."

2

probate of that will asserting that Rumsey was in default for failing to offer the will for probate within four years of Campbell's death.

On December 17, 2009, the trial court held a hearing on Rumsey's application to determine whether Campbell's will should be offered to probate. Rumsey testified that, in December 2008, he and his brother, Phillip, went to Freda's house to look around and see if there was anything they needed to take care of due to her passing. They found Campbell's and Freda's wills in a lock box in Freda's office. Thereafter, Rumsey sought to probate Campbell's will as a muniment of title.

Rumsey testified he first became aware of Campbell's will when he discovered it in Freda's lock box in December of 2008. Until then, he had made no inquiry into whether Campbell even had a will. Rumsey described his mother as being fairly organized, private and meticulous. He concluded that Freda must have had knowledge of Campbell's will because she kept it in a lock box containing her own will and he assumed she could have probated the will.

Brown testified Freda knew her husband executed a will in January 1977 and kept all her documents in a fireproof safe box. She also testified that Freda was very organized. After Campbell's death, Brown accompanied Freda to a bank to open a safety deposit box. Brown waited in the car until Freda returned carrying a money bag containing papers. Brown asked about her father's insurance and whether he had a will. Freda never answered but instead handed Brown two documents -- her father's "do-not-resuscitate" certificate and a military certificate dated in the 1940s.

3

In January 2010, the trial court issued an order admitting Campbell's will to probate finding that, although more than four years had elapsed between Campbell's date of death and the application for probate, Rumsey "[was] not in default." Brown subsequently requested that the trial court make findings of fact and conclusions of law, and, in February 2010, the trial court responded. In its findings of fact, the trial court found, in pertinent part, that Rumsey "was not in possession of the will or aware of the will prior to December 2008" and "[did] not know why the will was not filed for probate." Accordingly, the trial court concluded as a matter of law that Rumsey, the party applying for probate of the will, "was not in default for failing to offer Decedent's will for probate within four years of the date of Decedent's death." This appeal followed.

**Applicable Law**

**I**n pertinent part, § 73 of the Texas Probate Code provides as follows:

(a) No will shall be admitted to probate after the lapse of four years from the death of the testator unless it be shown by proof that *the party applying for such probate* was not in default in failing to present same for probate within four years aforesaid; and in no case shall letters testamentary be issued where a will is admitted to probate after the lapse of four years from the death of the testator.

(Emphasis added).

The language of § 73(a) was added to the Revised Civil Statutes in the 1879 revision of article 3248 and has remained unchanged since that time.[3] *See Abrams v.*

---

[3]We note that in enacting § 256.003(a) of the Estates Code, the Legislature has slightly altered the language that has now been in use for over 130 years. *See* Act of May 26, 2009, 81st Leg., R.S., ch. 680, 2009 Tex. Gen. Laws 1512, effective January 1, 2014.

4

*Ross' Estate*, 250 S.W. 1019, 1021 (Tex. Comm'n App. 1923).[4]  One purpose of the statute is to impose a reasonable limit on the time in which the property of a person dying testate should be distributed among his legatees, after payment of his or her debts.  *In the Estate of Rothrock*, 312 S.W.3d 271, 274 (Tex.App.--Tyler 2010, no pet.) (citing *Hodge v. Taylor*, 87 S.W.2d 533, 535 (Tex.Civ.App.--Fort Worth 1935, writ dism'd)).  In addition, a person having custody of a will is charged with the knowledge that it must be filed for probate within the statutory period in order to rely on it, whether the necessity for doing so is apparent or not.  *Id.,* 312 S.W.3d at 274 (citing *St. Mary's Orphan Asylum of Tex. v. Masterson*, 57 Tex.Civ.App. 646, 654, 122 S.W. 587, 591 (Tex.Civ.App.--San Antonio 1909, writ ref'd)).  *But see Kamoos v. Woodward,* 570 S.W.2d 6, 8-9 (Tex.App.--San Antonio 1978, writ ref'd n.r.e.) (holding that proponent of will was not in default for failing to present the will for probate within four years of the testator's death where due to the nature of the property of which she was aware and her limited resources, she didn't think it necessary to probate the will).

In the context of § 73(a) "default" means the failure to probate a will due to the absence of reasonable diligence on the part of the party offering the instrument.  *Schindler v. Schindler*, 119 S.W.3d 923, 929 (Tex.App.--Dallas 2003, pet. denied) (citing *House v. House*, 222 S.W. 322, 325 (Tex.Civ.App.--Texarkana 1920, writ dism'd w.o.j.);

---

[4]As discussed more fully hereinbelow, the precedential value of this opinion is subject to some debate.  Although some citations to this opinion have indicated that the Texas Supreme Court took no action on the decision of the Texas Commission of Appeals, other citations have indicated that the *opinion* of the Commission was "adopted," while still others have indicated that only the *judgment* of the Commission was adopted.  The better reasoned view is that the Supreme Court took no action.  Therefore, it cannot be stated with certainty whether the reasoning or specific holding of the Commission was approved or adopted by the Texas Supreme Court.  *See The Greenbook: Texas Rules of Form* 5.2 (Texas Law Review Ass'n ed., 12th ed. 2010).

*Kamoos,* 570 S.W.2d at 8. The burden is on the party applying for probate to show he or she was not in "default" by failing to present a will for probate within the proper time. *In the Estate of Rothrock*, 312 S.W.3d at 274. The question of whether the party applying for probate is in default is ordinarily a question of fact for the trial court. *Kamoos*, 570 S.W.2d at 7-8 (citing *Armstrong v. Carter,* 291 S.W. 626 (Tex.Civ.App.--Waco 1927, no writ). In *Armstrong,* the Waco Court said:

> Under [the prior statute] it is provided that a will may be probated after four years, if it is shown that the party applying for such probate was not in default in offering same for probate before the four years had elapsed. Clearly, the intention of the Legislature was to lodge with the trial court or jury the power to determine as a question of fact, where there is any evidence raising the issue, whether there was a default. The tendency of our courts has been from the earliest decisions to permit wills to be filed after the four-year period, where there is any evidence of a probative force which would excuse the failure to offer the will sooner.

(Citations omitted). *Id.,* 291 S.W. at 627.

Generally, a party applying for probate would not be considered personally in default if he or she did not know of the existence of the will provided such proponent was not negligent in failing to discover whether there was a will. *Schindler*, 119 S.W.3d at 929. Furthermore, § 73(a) has repeatedly been interpreted as providing that the default of another does not preclude a non-defaulting applicant from offering a will for probate as a muniment of title. *In re Williams,* 111 S.W.3d 259, 263 (Tex.App.--Texarkana 2003, no pet.); *Masterson,* 122 S.W. at 591 (holding that the party applying for probate must be judged by *his own conduct* and circumstances in evaluating whether his burden has been met regarding a finding that he is not in "default" for failing to present a will for probate within the proper time). *But see Brown v. Byrd,* 512 S.W.2d

6

758, 760-61 (Tex.Civ.App.--Tyler 1974, no writ) (finding that, if any devisee was in default, such default would bar his or her descendants from any right to have such will probated); *Abrams,* 250 S.W. at 1019; *Faris v. Faris,* 138 S.W.2d 830 (Tex.Civ.App. Dallas 1940, writ ref'd); and *Matt v. Ward,* 255 S.W. 794 (Tex.Civ.App.--Fort Worth 1923, writ ref'd).

## Standard of Review - Issue One

By her first issue, Brown contends the evidence was legally and factually insufficient to establish that Rumsey was not in "default" for failing to file Campbell's will for probate within four years of his death. In conducting a legal sufficiency review,[5] we must consider the evidence in the light most favorable to the challenged finding, indulge every reasonable inference to support it; *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005), and credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not**.** *Id.* at 827. A challenge to legal sufficiency will be sustained when, among other things, the evidence offered to establish a vital fact does not exceed a scintilla.[6] *Kroger Tex. Ltd. P'ship v. Suberu,* 216 S.W.3d 788, 793 (Tex. 2006). Furthermore, so long as the evidence falls within the zone of reasonable disagreement, we may not invade the role of the factfinder, who alone determines the credibility of witnesses, the weight to be given their testimony, and whether to accept or reject all or part of their testimony. *City of Keller,*

---

[5]When both legal and factual sufficiency challenges are raised on appeal, the reviewing court must first examine the legal sufficiency of the evidence. *See Glover v. Tex. Gen. Indemnity Co.,* 619 S.W.2d 400, 401 (Tex. 1981).

[6]Evidence does not exceed a scintilla if it is "so weak as to do no more than create a mere surmise or suspicion" that the fact exists. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

7

168 S.W.3d at 822. The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 827.

An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965). In reviewing factual sufficiency, the reviewing court must consider, examine and weigh all of the evidence in the record. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406-07 (Tex. 1998), *cert. denied,* 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998). In doing so, the court no longer considers the evidence in the light most favorable to the finding; instead, the court considers and weighs all the evidence, and sets aside the disputed finding only if it is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.* at 407; *Gooch v. American Sling Co.,* 902 S.W.2d 181, 183-84 (Tex.App.–Fort Worth 1995, no writ).

**Analysis**

Because Rumsey filed the application to probate Campbell's will more than four years after Campbell's death, it was his burden to show that he exercised reasonable diligence in offering the will for probate, i.e., that he was not in "default." Brown's first issue contends the trial court erred in its findings of fact because Rumsey failed to meet that burden.

8

Here, the evidence shows that Rumsey first discovered his stepfather's will in December of 2008, when he opened his mother's lock box shortly after her death. The evidence further shows that prior to that discovery he was unaware of a need to probate that will[7] and that he offered the will for probate within seven months of its discovery. Considering all of the evidence in the light most favorable to the judgment, we believe a reasonable and fair-minded jurist could have found that Rumsey was reasonably diligent and, therefore, not in default for failing to present his stepfather's will for probate within the time allowed by § 73(a). Furthermore, we do not believe that the finding that Rumsey was not in default is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Accordingly, we find that the evidence presented was both legally and factually sufficient to establish that Rumsey was not in "default" for failing to file the will for probate within four years of Campbell's death. Issue one is overruled.

## Standard of Review - Issue Two

Brown's second issue contends the trial court erred in its conclusions of law by misapplying the law to the facts. Brown asserts the trial court erred when it admitted Campbell's will to probate because more than four years lapsed between Campbell's death in 2002 and Rumsey's application for probate in 2009. In support of her argument, she contends that because Freda was in default for having possession of Campbell's will for six years after his death and never probating it, then Rumsey's

---

[7]Prior to Freda's death Rumsey was neither an executor nor an "interested party" in Campbell's estate. Therefore, prior to her death, Rumsey did not have the authority to apply to have Campbell's will probated. *See* Tex. Prob. Code Ann. § 76 (West 2003).

9

attempt to probate that will should be barred because he is in no better position than his mother.[8] Because Freda did not probate Campbell's will, Brown asserts Campbell is considered to have died intestate and Rumsey is entitled to no greater share from Campbell's estate than his mother was entitled as an heir-at-law. Specifically, Brown contends the trial court made an incorrect conclusion of law by failing to attribute Freda's lack of diligence to Rumsey.

Rumsey contends that Freda's default cannot be imputed to him because, as the proponent of Campbell's will, the proper issue is whether *he* defaulted, not whether Freda defaulted. Because he was unaware of Campbell's will until its discovery in Freda's lockbox in December of 2008, and he offered it for probate within a reasonable time of his acquiring an interest in the property and learning of the existence of Campbell's will, he is not in "default" within the meaning of § 73(a). Accordingly, Rumsey asserts the trial court properly found that he was not in default.

A trial court's conclusions of law are reviewed *de novo*. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex. 2002). An appellant may not challenge a trial court's conclusions of law for factual sufficiency; however, the reviewing court may review the trial court's legal conclusions drawn from the facts to determine their correctness. *Neufeld v. Hudnall,* No. 07-09-00350-CV, 2010 Tex. App. LEXIS 5601, at *4 (Tex.App.—Amarillo July 16, 2010, pet. denied) (mem.op.); *Mustang Amusements,*

---

[8]It should be noted that in its formal *Findings of Fact and Conclusions of Law* the trial court never specifically found that Freda was in default and Brown never requested additional findings of fact or conclusions of law.

10

*Inc. v. Sinclair,* No. 10-07-00362-CV, 2009 Tex. App. LEXIS 8338, at *8-9 (Tex.App.—Waco Oct. 28, 2009, no pet.) (mem. op.).

## Analysis

In taking the position that the trial court erred by failing to attribute Freda's lack of diligence to Rumsey, Brown relies heavily upon two cases: *In re Estate of Williams,* 111 S.W.3d 259, 263 (Tex.App.--Texarkana 2003, no pet.), and *Schindler v. Schindler*, 119 S.W.3d 923, 929 (Tex.App.--Dallas 2003, pet. denied).  As more fully discussed below, both *Williams* and *Schindler* involve fact situations where the title to real property is impacted by events occurring after the date of death of the testator but before the application for probate, where admitting the will to probate operates so as to work an injustice pertaining to the ownership of that property.  Because court decisions dealing with this issue have shown considerable disarray and because we believe that both cases relied upon by Brown are distinguishable from the facts of this case, we conclude that our decision is not controlled by their holdings.

### *In re Estate of Williams*

We believe that the holding in *Williams* does not support Brown's conclusion.  Brown cites *Williams* for the proposition that "if any heir or devisee was in default, such default would bar his or her descendants or legatees from any right to have such will probated."  However, a careful reading of the opinion shows this was not the holding of the court.  In *Williams*, the Texarkana Court clearly states that "[o]nly the default of the party applying for the probate of the will is an issue."  In that case*,* C. O. Williams applied for and obtained probate of the will of his father, C. F. Williams, eighteen years

11

after his death. In reversing the decision of the trial court and denying probate of the will, the appellate court said, "[b]ecause C. O. was in default in failing to present the will within the four-year period, the trial court erred in admitting the will to probate." In the final analysis, no default was imputed to anyone and the will in question was denied probate because the party applying for probate of the will was himself in default.

### *Schindler v. Schindler*

As to *Schindler,* while we acknowledge the Dallas Court of Appeals did state, "if any heir or devisee was in default, such default would bar his or her descendants or legatees from any right to have such will probated," 119 S.W.3d at 929, we do not believe that this opinion, nor the three cases cited in support of this statement,[9] should be read as mandating the inflexible, automatic imputation of default in every case. Under that standard, before a will could be probated as a muniment of title more than four years after the death of the testator, the proponent of a will would have the burden of showing that every person from whom he or she inherited an interest was not in default. Such a requirement would be contrary to the long standing practice in Texas of admitting wills to probate as a muniment of title, more than four years after the testator's death, where to do so would not work an injustice and the proponent of the will can establish reasonable diligence on his or her part alone in offering the will for probate. *See Kamoos*, 570 S.W.2d at 7.

The dispute in *Schindler* involved the probate of the second will of Ruby Schindler. There, the only non-defaulting proponent stood to inherit property that had

---

[9]*See Abrams,* 250 S.W. at 1022; *Faris,* 138 S.W.2d at 832; and *Matt,* 255 S.W. at 795-96.

previously passed to other devisees in accordance to the terms of Ruby's earlier probated original will. Because the proponent's putative predecessor in title had not only "defaulted" in offering the second will for probate, but had also actually probated the original will, in order to avoid an unjust result, the trial court attributed the lack of diligence on the part of the proponent's predecessor in title to the proponent. Those facts alone significantly differentiate *Schindler* from the facts of this case.

In *Abrams*, forty-nine years after the death of the testator, the trial court denied probate of the will of Sarah Ross. The intermediate appellate court reversed that decision on procedural grounds and remanded the matter to the trial court so that further testimony could be offered pertaining to the diligence of the will proponents and the standing of the will contestants. In affirming the decision of the intermediate appellate court to remand the matter to the trial court for further proceedings, the Texas Commission of Appeals offered, as dicta, an opinion as to future burden the proponents faced in establishing that they were not in default for failing to timely offer the will for probate. Due to events affecting title to real property the subject of the probate estate, which occurred during the intervening forty-nine years, the Commission suggested that the default of a predecessor in title would bar his or her descendants from any right to have the will probated. Under the facts of that case, a contrary result would have worked an injustice.

In *Faris,* the testator died leaving a will that bequeathed his entire estate to his wife, Sophia. With full knowledge of the existence of the will, Sophia put it in her lock box where it remained until her death, nearly twenty years later. After her death,

Ellsworth Faris, her son and the proponent of the will, withdrew the will from his mother's lock box and offered it in probate. The court of appeals affirmed the trial court's decision to *deny* probate of the will as a muniment of title holding that Sophia had abandoned any rights she might have had under the will by not offering it for probate while it was in her possession. The court reasoned that "it would be against the public policy of this State to allow a will to be probated some nineteen years after the death of the testator . . . ." *Faris,* 138 S.W.2d at 831. In its formal "Findings of Fact," the trial court found that Ellsworth also had knowledge of the existence of the will during that critical nineteen-year period. Under these circumstances, because it could be said that the proponent of the will also failed to use reasonable diligence in offering the will for probate, the court's decision did not necessarily turn on the transfer of default from Sophia to her descendant.

Finally, in *Matt v. Ward,* based on the principle that an heir occupies the place of his or her ancestor, the appellate court concluded that because the proponent's mother was in default, the proponent would be precluded from probating a will after four years. In that case, unlike here, the trial court denied probate of the will after the proponent unsuccessfully argued that the dicta in *Abrams* did not control.

Because we believe that the strict application of the above-referenced quote from *Schindler* misconstrues § 73(a), misapplies the authorities cited, and is contrary to a great body of law allowing a non-defaulting proponent to offer a will for probate more than four years after the death of the testator when intervening events would not work an injustice or frustrate the intent of the testator, we decline to apply the holding of our

14

sister court to the facts of this case and, instead, choose to follow *Armstrong, Kamoos* and their progeny.

Accordingly, we are unable to say that the trial court erroneously applied the law to the facts of this case. Issue two is overruled.

**Conclusion**

The trial court's judgment is affirmed.


Patrick A. Pirtle
Justice