# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-20-00449-CV

---

**Horace Marshall, Appellant**

**v.**

**Estate of Jupitor T. Freeman, a/k/a Jupiter T. Freeman, Deceased, Appellee**

---

**FROM THE COUNTY COURT AT LAW NO. 1 OF BELL COUNTY
NO. 33,627, THE HONORABLE JEANNE PARKER, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Horace Marshall contends that the trial court erred by admitting Testator Jupitor T. Freeman a/k/a Jupiter T. Freeman's will as muniment of title forty-one years after Testator's death. Because no evidence supports the trial court's conclusion that Executor Hobert Freeman was not in default when he applied to probate the will as muniment of title a year after being told by an attorney he consulted that he needed to probate the will, we will reverse the trial court's order and render judgment denying the application to admit the will to probate as muniment of title.

BACKGROUND

Executor was among six sons born to Testator and his first wife, Nevador, who died in 1959.[1] In 1963, Testator married Lena Mae Marshall and lived with her and her children, Appellant and Cheryl Marshall. The birth certificates for Cheryl Marshall (born 1958) and Appellant (born 1961) do not list a father, but the record contains Appellant's high school records listing Testator as his father and report cards from 1976-77 with the signature of "Jupiter Freeman" as Appellant's parent or guardian.

Testator signed the will at issue on April 24, 1972, leaving his estate to "my sons," whom he later in the will identified as J.T., Leroy, Harriel, Hobert, Obie, and Alvin Freeman; the will did not mention Appellant, Cheryl, or their mother, Lena Mae. The will lists a 20-acre farm as Testator's property.

Testator and Lena Mae divorced on October 27, 1977. Testator died on November 25, 1977.

A 2001 general warranty deed lists Jupitor T. Freeman, Jr., (J.T.), individually and as independent executor of Testator's estate, as the grantor of a fee simple determinable interest on a .64-acre tract of land to a church so long as the property was used as a church. Testimony indicates that the deeded land was part of a larger plot of family land at issue here. Executor testified that he thought J.T. was "over the estate" and that J.T. lived on the other portion of the property for about fifty years. The deed stated that the law firm that prepared the

---

[1] A seventh son, Billy, died before the relevant will was made.

deed had not examined the title and did not guarantee that good and marketable title was conveyed. The church eventually returned its portion of the property to the family.[2]

In 2014, the City of Troy obtained an easement for sewer, drains, manholes, and public utilities on the property. Executor testified at the February 2020 hearing on admission of the will as muniment of title that, after reaching agreement with the brothers named under the will, he authorized the placement of a manhole on the property; he testified that he did not know about the will at that time. Executor testified that four or five years before the February 2020 hearing he learned that his niece had found Testator's will in a suitcase or locker at Executor's brother's house. That testimony would place the discovery in February of 2015 or 2016, though Executor testified to discovery dates ranging from as early as 2014 to a year or so before the hearing.

Executor testified that, perhaps two or three years before the hearing, the Texas Highway Department paid the brothers $1,000 related to Executor's request that the department build access to the property. Executor testified that he consulted attorney Jerry Secrest regarding the Department's action about eighteen months before the February 2020 hearing, which would place the consultation in August 2018. He said Secrest told him "it need[s] to be probated"— apparently referring to the will.

Robert Gaines agreed in October 2018 to purchase a 19.3-acre farm from the Freeman brothers. The surviving Freeman brothers and descendants of the deceased Freeman brothers signed an agreement with Gaines that allowed J.T. and his wife to live in a residence on

---

[2] The record is somewhat unclear regarding to whom the church granted the property; the deed is not in the record. Any ownership is beyond the scope of this appeal.

the 19.3-acre tract of land for as long as they are able to live in the house. Appellant and Cheryl Marshall were not part of the agreement.

On January 7, 2019 Appellant filed an application to determine heirship and for partition of a 19.36-acre tract of real property. On August 5, 2019, Executor filed an application for probate of the will as a muniment of title concerning that tract and others.

After two hearings, the trial court found that the will was valid and ordered that it be filed as a muniment of title. The trial court also signed a "Memo to the File to indicate the reasons for [its] decision." The trial court wrote that, "[i]nasmuch as the testimony was that deceased was living with Lena, Cheryl and Horace [when he wrote the will] but neither child was included as an heir in [the deceased]'s Will, it appeared that deceased's intent was to exclude Cheryl and Horace as takers under his will." The trial court thereafter concluded:

> Although more than 4 years elapsed since the death of [the deceased], it was not until the Highway Department wanted to purchase some of the land owned by the heirs of [the deceased] that the heirs were told to get the Will probated. Considering the education of the heirs, and their lack of understanding of the legal system, the Court does not find that they lacked due diligence in having the Will probated within the 4 years after the date of death of [the deceased].

Appellant filed a motion to reconsider but did not request formal findings of fact and conclusions of law.

## APPLICABLE LAW

With exceptions not applicable here, a will may not be admitted to probate after the fourth anniversary of the testator's death unless it is shown by proof that the applicant for the probate of the will was not in default in failing to present the will for probate on or before the

4

fourth anniversary of the testator's death. Tex. Est. Code § 256.003(a);[3] *Ferreira v. Butler*, 575 S.W.3d 331, 334 (Tex. 2019); *see also* Tex. Est. Code § 257.054 (applicant for probate of will as muniment of title must prove that four years have not elapsed since date of testator's death and before application).[4] "Default" means "failure to probate a will due to the absence of reasonable diligence on the part of the party offering the instrument." *In re Estate of Allen*, 407 S.W.3d 335, 339 (Tex. App.—Eastland 2013, no pet.) (construing predecessor to section 256.003); *see also In re Estate of Rothrock*, 312 S.W.3d 271, 274 (Tex. App.—Tyler 2010, no pet.).

A person having custody of a will is charged with knowledge that it must be filed for probate within the statutory period in order to rely on it, whether the necessity for doing so is

---

[3] Though the will was written in 1972, Testator died in 1977, and the probate was applied for in 2019, the parties did not assert at the trial court or here that the 2009 codification of the Texas Estates Code resulted in any substantive change applicable here. The codification was not intended to make any substantive change. *See* Tex. Est. Code § 21.001(a); *In re Estate of Campbell*, 343 S.W.3d 899, 902 n.3 (Tex. App.—Amarillo 2011, no pet.) (applicable statute only slightly altered).

[4] We note that, while the general probate statute expressly allows for the probate of a will more than four years after the death of the testator on proof that the applicant was not in default, the statute on probate of a will as muniment of title requires proof that "four years have not elapsed since the date of the testator's death and before the application" and does not have a similar express exception for applicants not in default. *Compare* Tex. Est. Code § 256.003(a) *with id.* § 257.054(2); *see also Ferreira v. Butler*, 531 S.W.3d 337, 341 n.3 (Tex. App.—Houston [14th Dist.] 2017), *vacated by* 575 S.W.3d 331 (Tex. 2019). The Court of Appeals in *Ferreira* expressly did not decide whether the non-default exception applied to muniment cases because it found the applicant in default, and the Texas Supreme Court did not address the issue in vacating the judgment of Court of Appeals on grounds that one person's default could not bar another person applying to probate a will as muniment of title in her individual capacity. However, section 257.054(2) was added as part of the 2009 codification of the Estates Code which was expressly intended not to work substantive changes to the law. *See* Tex. Est. Code § 21.001(a); *In re Estate of Campbell*, 343 S.W.3d 899, 902 n.3. Because Appellant does not raise this issue as grounds for reversal and because we do not find an express holding that the non-default exception to the four-year limitation is no longer applicable to muniment cases, we will examine the record for evidence supporting the trial court's conclusion that Executor was not in default despite filing his application forty-one years after Testator's death.

apparent to him or not. *Rothrock*, 312 S.W.3d at 274. Ignorance of the law does not excuse failure to comply with the statute. *See Brown v. Byrd*, 512 S.W.2d 753, 757 (Tex. Civ. App.—Tyler 1974, no writ), *disapproved of on other grounds by Ferreira*, 575 S.W.3d at 338 (disapproving of cases imputing one person's default to others)). A person who has custody of a will and refrains for the statutory period from presenting it for probate for personal considerations or under the assumption that his title to property is safe without it is in default. *Rothrock*, 312 S.W.3d at 274. As used in section 256.003(a), "default" means failure to probate a will because of the absence of reasonable diligence by the party offering the instrument. *Ramirez v. Galvan*, No. 03-17-00101-CV, 2018 WL 454733, at *2 (Tex. App.—Austin Jan. 10, 2018, no pet.) (mem. op.) (citing *In re Estate of Allen*, 407 S.W.3d 335, 339 (Tex. App.–Eastland 2013, no pet.)).

However, Texas courts have been quite liberal in admitting a will to probate as a muniment of title after the four-year limitation period has expired upon the showing of an excuse by the proponent of the reason for the failure to offer the will. *Chovanec v. Chovanec*, 881 S.W.2d 135, 137 (Tex. App.—Houston [1st Dist.] 1994, no writ); *see also Allen*, 407 S.W.3d at 339. Nearly a century ago, the Waco Court of Appeals observed that "[t]he tendency of our courts has been from its earliest decisions to permit wills to be filed after the four year period, where there is any evidence of a probative force which would excuse the failure to offer the will sooner." *Armstrong v. Carter*, 291 S.W. 626, 627 (Tex. App.—Waco 1927, no writ).

Though ignorance of the law is no excuse, the proponent's belief that probate is unnecessary, coupled with a concern over the possible cost of probate, can constitute legally and factually sufficient evidence to support admitting a will to probate more than four years after the

6

death of the testator. *Kamoos v. Woodward*, 570 S.W.2d 6, 8-9 (Tex. App.—San Antonio 1978, writ ref'd n.r.e.). Generally, a party applying for probate would not be considered personally in default if he or she did not know of the existence of the will, provided such proponent was not negligent in failing to discover whether there was a will. *In re Estate of Campbell*, 343 S.W.3d 899, 903 (Tex. App.—Amarillo 2011, no pet.) *rejected on other grounds by Ferreira*, 575 S.W.3d at 338 (rejecting consideration of whether late probate would work an injustice or frustrate testator's intent)). The evidence must show a lack of diligence in offering the will for probate as muniment of title. *See In re Estate of McGrew*, 906 S.W.2d 53, 56 (Tex. App.—Tyler 1995, writ denied). Courts must examine solely the applicant's actions to determine default and cannot consider whether permitting the late probate of a will would work an injustice or frustrate the intent of the testator. *Ferreira*, 575 S.W.3d at 338 n.56 (rejecting contrary statement in *Campbell*, 343 S.W.3d at 907-08).

The burden is on the applicant to show that he was not in default in failing to present a will for probate within the proper time. *Rothrock*, 312 S.W.3d at 274. Whether the party applying for probate is in default is ordinarily a fact question for the trial court. *Id*. at 273.

When findings of fact are neither filed nor requested following a bench trial, it is implied that the trial court made all findings necessary to support its judgment, provided that (1) the necessary findings are raised by the pleadings and supported by the evidence, and (2) the decision can be sustained by any reasonable theory consistent with the evidence and applicable law. *Id.* at 273-74. The trial court's express or implied findings of fact after a bench trial are reviewable for legal and factual sufficiency by the same standards applied in reviewing the evidence supporting a jury's answer. *Id*.

7

Appellant does not specify whether his challenge is directed toward the legal or factual sufficiency of the evidence. However, Appellant asks in his prayer for relief that we reverse and direct the trial court's rendition of decision on the will issue—the equivalent of a legal-sufficiency challenge.[5] *See* Tex. R. App. P. 38.1(j) (brief must contain short conclusion clearly stating nature of relief sought); *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 392 (Tex. 2011) (generally courts can grant only relief requested); *Elias v. Mr. Yamaha, Inc.*, 33 S.W.3d 54, 59 n.6 (Tex. App.—El Paso 2000, no pet.) (rendition is remedy for legal-sufficiency challenge).

When an appellant attacks matters upon which the appellee had the burden of proof on legal-sufficiency grounds, we must consider only the evidence and inferences that, when viewed in their most favorable light, tend to support the finding and disregard all evidence and inferences to the contrary. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005); *Holt Atherton Indus. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992). Where reasonable minds could differ on the meaning of the evidence before the trial court or the inferences and conclusions to be drawn from the evidence, we may not substitute our judgment for that of the trial court so long as the evidence falls within this zone of reasonable disagreement. *City of Keller*, 168 S.W.3d at 822; *Rothrock*, 312 S.W.3d at 274. If more than a scintilla of evidence supports the finding, the no-evidence challenge fails. *Heine,* 835 S.W.2d at 84.

---

[5] Though Appellant in the introductory portion of his brief requests remand of the case, his prayer for relief clarifies that he seeks remand of the case to pursue his application for an heirship determination.

**DISCUSSION**

Appellant contends by point one that the trial court erroneously admitted the will as a muniment of title over forty-one years after Testator's death. We will examine the record to determine whether any evidence supports the trial court's conclusion that Executor was not in default when he applied to probate the will as muniment of title. We look to an array of cases to describe the necessary diligence.

Viewed most favorably to the court's order, the evidence shows that Executor did not know there was a will for about forty years, and there was no evidence that Executor was negligent in failing to discover it locked in a suitcase at his brother's home when he did not know a will existed. *See Campbell*, 343 S.W.3d at 903.

However, no evidence supports a conclusion that Executor acted reasonably diligently in probating the will as muniment of title upon discovering the will and the need for probate. His eleventh-grade education, lack of experience acting as executor of a will, and lack of legal sophistication do not excuse his decision not to apply for probate of the will for a year after his lawyer told him he needed to do so. There is no evidence in the record that he lacked funds to hire a lawyer other than perhaps an inference from the fact that the taxes on the property were past due, and that tenuous inference is undermined by the fact that Executor learned that the will needed to be probated by consulting a lawyer. This case is unlike the case in which delay in probating was excused because there was evidence, albeit disputed, that the applicant had previously received advice from an attorney and believed that everything regarding the will that needed to be done had been done and that probate was unnecessary. *See In re Estate of Ozee*, No. 06-12-00070-CV, 2012 WL 5897602, at *3 (Tex. App.—Texarkana Nov. 26, 2012, no pet.)

9

(mem. op.). Here, the evidence is that Executor waited a year after being told he needed to probate the will, including seven months after Appellant filed his suit to establish heirship.

The year-long delay after being told to probate the will by a lawyer he consulted about negotiations with the highway department distinguishes this case from ones in which people who had assumed they did not need to probate a will did so shortly after learning of the need to probate the will. In *Kamoos*, the court affirmed a finding of no default when an applicant of limited means, upon learning from an oil company of an outstanding royalty interest and of the need to probate the will five years after her husband's death, "immediately went to an attorney and the will was offered for probate." 570 S.W.2d at 9. Similarly, in *Chovanec*, an applicant did not probate his wife's will for thirteen years because he believed he had inherited everything, but upon learning there might be title problems, "immediately" offered the will for probate. 881 S.W.2d at 137. The appellate court in *Chovanec* reversed a summary judgment denying probate after concluding that this evidence showed more than applicant's ignorance of the law and raised a fact issue regarding the applicant's default. *Id*. at 137-38. In *In re Estate of Hammack*, the applicant testified that he did not apply for probate of his wife's will for eight years after her death because he lacked the money to do so; but when he learned that probate was necessary to sell his house, he hired counsel and applied to probate her will as muniment of title two months later. No. 12-15-00246-CV, 2016 WL 1446083, at *1 (Tex. App.—Tyler Apr. 13, 2016, no pet.) (mem. op.). The *Hammack* court held that the evidence created a fact issue regarding default for the trial court to decide and affirmed the trial court's finding of no default.

Executor's actions do not resemble those that this Court found compelled reversing and remanding a trial court's refusal to admit a will to probate late. *See Ramirez*, 2018 WL 454733, at *1. In that case, an immigrant widower unfamiliar with Texas law who

10

believed that his wife's will was sufficient alone to convey the property to him did not apply for probate for six years after her death. *Id.* However, upon being informed by a title company that probate was necessary, he consulted an attorney and "promptly" filed an application to probate the will as muniment of title. *Id.* The trial court denied the application, but this Court reversed the denial and remanded, concluding that the trial court's decision was against the great weight and preponderance of the evidence. *Id.* at *2-3. Here, there is no evidence that Executor affirmatively believed that probate was not necessary, only that he did not apply for it for years after learning of the will's existence and for a full year after being told he needed to probate the will. In these circumstances, we cannot construe applying for probate a year after learning of the need to probate the will as "prompt."

The facts in this case do not conform to those in the Amarillo Court of Appeals opinion that affirmed a trial court's finding that the applicant was not in default when applying to probate a will seven-and-a-half years after the testator's death. *Campbell*, 343 S.W.3d at 901, 908. In that case, the applicant discovered the will almost seven years after the testator's death and did not know of the need to probate the will but applied for probate seven months after discovering the will. *Id.* at 901-02. The court of appeals affirmed the trial court's admission of the will to probate relying in part on precedent allowing late probate when it would not work an injustice or frustrate the intent of the testator, using it as an exception to the principle that a benefactor's lack of diligence is imputed to the benefactor's heirs. *Id.* at 906-08. The Texas Supreme Court has since rejected both the imputation of another's default and the evaluation of the equities of probate—including possible frustration of the testator's intent—when considering the applicant's diligence, instructing courts that "only the applicant's conduct is relevant to determining whether she 'was not in default.'" *Ferreira*, 575 S.W.3d at 337-38.

11

This case is also distinct from the case in which the court affirmed the admission of a will to probate as muniment of title three years after learning of a competing claim to title to the property devised by a will. *McGrew*, 906 S.W.2d at 56. In that case, the applicants bought the property ten years after the testator's death and did not know of the competing claim for another three years. *Id.* The court of appeals held that the evidence in the case failed to show a lack of diligence by applicants during the additional three years before they applied for probate of the will. *Id.* The court did not mention any evidence that the applicants were told they needed to probate the will.

In this case, there is no evidence of diligence—and undisputed evidence of lack of reasonable diligence—in applying for probate of the will and no evidence of excuse for Executor's delay. While Executor's delay is excusable for the decades after Testator's death before he learned of the will, Executor was charged with knowledge that the will must be filed for probate upon learning that his niece had found the will. *See Rothrock*, 312 S.W.3d at 274. Even if his lack of higher education and legal sophistication excuse his failure to apply for probate through August 2018, no evidence supports a finding of reasonable diligence in his failure to apply for probate for a year after a lawyer told him that the will needed to be probated. This is not a case in which he believed a lawyer told him that he did not need to probate the will or in which someone else filed a legal action that he believed would lead to probate of the will. Instead, he did not file to probate the will when told he needed to do so and waited seven months after Appellant filed his Application for Determination of Heirship and for Partition of Property that expressly, if incorrectly, stated that Testator died intestate. No evidence in the record provides an explanation or excuse for Executor's delay for a year after being told to file the will

12

for probate, including seven months after Appellant filed this suit. Executor failed to carry his burden to prove diligence that negates default in timely probating the will.

Looking solely at evidence of Executor's conduct in the light most favorable to the trial court's decision, we conclude that the trial court erred by finding that Executor proved he was not in default because no evidence supports the trial court's implicit conclusion that Executor acted with reasonable diligence in applying to probate the will as a muniment of title. Instead, undisputed evidence shows a lack of reasonable diligence in his filing of the application to probate the will as muniment of title four or five years after learning of the will, one year after being told by his former lawyer he should apply for probate of the will, and seven months after Appellant filed his heirship application alleging that he believed Testator died intestate.[6]

We sustain Appellant's point one. Accordingly, we need not reach Appellant's remaining points asserting that the trial court erred by placing the burden of proof on Appellant and by relying on its Memo to the File upon Testator's perceived intent and the effects of admitting the will as a muniment of title. *See* Tex. R. App. P. 47.1(a).

## CONCLUSION

We reverse the trial court's order admitting the will to probate as a muniment of title and render judgment denying the application to probate the will as muniment of title. The cause may resume in the trial court with further proceedings consistent with this opinion and judgment.

---

[6] Even if Appellant had alternatively requested a factual-sufficiency review, our conclusion that no evidence supports the judgment would make a factual-sufficiency review unnecessary.

13

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Baker and Smith

Reversed and Rendered

Filed:   April 29, 2022